1
2
3
4
5
6
7

**FILED & ENTERED**

**JUN 03 2024**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gooch      DEPUTY CLERK**

8          UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10                RIVERSIDE DIVISION

11

In re:                                    Case No.: 6:24-bk-13099-WJ

12

SEVINA DANIELLE BEGA and                  CHAPTER 13
13   RYAN WILLIAM BEGA,

14                        Debtors.         **CHAPTER 13 PROCEDURES ORDER**

15

16                                        Status Conference:
                                          Date:   June 26, 2024
17                                        Time:  2:30 p.m.
                                          Crtm:  304
18

19

20

21

22

23

24

25

26

27

28

1  <u>Status Conference</u>.  Pursuant to 11 U.S.C. § 105(d)(1), in order to further the expeditious

2 and economical resolution of this case, the Court hereby sets a status conference in this case for

3 the date and time set forth in the caption on the first page of this order.  The status conference

4 shall occur on the same date as the meeting of creditors.  If the parties resolve all issues at the

5 meeting of creditors and the case is ready for confirmation, the Court and the parties will review

6 and finalize the terms of the confirmation order at the status conference which in most (but not

7 all) instances should obviate the need for debtors and their attorneys to appear at the

8 confirmation hearing.

9  No party may appear at the status conference by telephone.  In addition, counsel of record

10 for all parties must personally appear in court at the status conference unless: (1) the parties have

11 resolved all case issues and objections and the parties agree that the case should proceed to

12 confirmation on agreed terms which the parties are prepared to recite on the record at the status

13 conference, (2) the parties agree the case should be dismissed or (3) all parties agree and consent

14 to a further meeting of creditors or status conference.  If such agreement exists between the

15 trustee, the debtors and any creditors who appear at the meeting of creditors, then debtors may

16 appear by special appearance counsel at the status conference.  Otherwise, counsel of record for

17 debtors must appear at the status conference.

18  In accordance with the provisions of 11 U.S.C. § 1324, the Court finds that holding the

19 confirmation hearing less than twenty days after the meeting of creditors is in the best interests of

20 the creditors, debtors, the trustee and the estate.  In most cases, the confirmation hearing will be

21 set for a date one to two weeks after the meeting of creditors.  However, any party who prefers

22 that the confirmation hearing be held on a later date may make an oral motion requesting such

23 relief at the status conference.  No written motion is required.

24  Likewise, as in the past, the trustee and creditors may orally move to dismiss this case at

25 the confirmation hearing or the status conference if the debtors violate the local or national rules,

26 the Standing Order or this order.[1]  No written motion is required.[2]

27

28

---

[1] Historically, the most common reasons for dismissal of chapter 13 cases in response to such motions have been when chapter 13 debtors fail to abide by local or national rules by failing (for example) to (1) appear at the

1    Standing Order.  The Court has issued a standing order setting forth procedures that

2    govern all chapter 13 cases including this one.  A copy of the standing order is attached to this

3    order as an exhibit ("Standing Order")[3] (and posted on the Court's website[4]) and, as stated in the

4    order, its terms hereby apply in this bankruptcy case.

5    Counsel for the debtor should promptly provide the debtor with a copy of this order and

6    the Standing Order.  Counsel for the debtor and the debtor should promptly review both orders

7    and confer with each other regarding their contents.  The chances of the debtor succeeding in this

8    case will increase (substantially) if the debtor and their counsel promptly review both orders and

9    comply with their terms.

10    The Standing Order is designed to assist chapter 13 debtors in succeeding in chapter 13

11    cases.  It provides the debtors and their counsel with important information necessary to succeed.

12    It covers key provisions of the local bankruptcy rules, the Bankruptcy Code and the Federal

13    Rules of Bankruptcy Procedure governing chapter 13 cases.  The order also identifies common

14    _____

15    meeting of creditors, (2) make the first plan payment to the trustee, (3) timely provide documents to the trustee prior to
the meeting of creditors, (4) timely file documents in the case, (5) file or provide required tax returns, etc.

16

17    [2] In addition, this case may also be dismissed (with or without a bar to re-filing) at the initial status conference
or any continued status conference pursuant to 11 U.S.C. §§ 1307(c), 105(a) & 349(a).  Pursuant to section 1307(c) and

18    105(a), the Court has the power to dismiss or convert a case on its own motion.  See Rosson v. Fitzgerald (In re
Rosson), 545 F.3d 764, 771 n.8 (9th Cir. 2008) ("Although the statute provides for conversion 'on request of a party . .

19    . or the . . . trustee,' 11 U.S.C. § 1307(c), there is no doubt that the bankruptcy court may also convert on its own
motion.  See id. § 105(a) ('No provision of this title providing for the raising of an issue by a party in interest shall be

20    construed to preclude the court from, sua sponte, taking any action or making any determination necessary or
appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.').").  Therefore, if the
debtors in this case do not comply with the local rules, the Standing Order or this order, the debtors should be prepared

21    to demonstrate at the status conference why the case should not be dismissed or converted by the Court on its own
motion (in addition to any other motion of the trustee or other party in interest).

22

23    [3] In limited circumstances, the Standing Order may not be attached to this order.  Given the length of the
document, it is only served electronically on counsel for chapter 13 debtors.  Therefore, in the rare instances in which
this order is served by mail on counsel for the debtors (because, for example, counsel for the debtors is not a registered

24    CM/ECF filer), then the standing order will not be attached.  In those cases, counsel should obtain a copy from the
Court's website using the information in the next footnote.

25    [4] The Standing Order is also available on the Court's website using the following link:

26    http://www.cacb.uscourts.gov/sites/cacb/files/documents/judges/instructions/WJ_Chapter%2013%20Procedures%20Order.pdf.  If for any reason this link does not work, the standing order can be found on the Court's website at

27    http://www.cacb.uscourts.gov/.  Select the heading "Judges" on the main page, and then on the next page click on
"Johnson, W" and then on the next page click on the subheading "Instructions/Procedures".  Then click on the link
entitled "Chapter 13 – Standing Order Regarding Chapter 13 Procedures (January 1, 2013)".

28

1    errors by chapter 13 debtors that often result in dismissal of chapter 13 cases at status

2    conferences and confirmation hearings.

3         Given the numerous requirements of applicable law governing chapter 13 plans, most

4    chapter 13 cases fail in this district and this division.  Indeed, in the Riverside Division of the

5    Court, the chapter 13 standing trustee has calculated that 92% of all chapter 13 cases fail (i.e.,

6    fail to result in a confirmed and fully performed chapter 13 plan) and a very large portion fail

7    prior to or at the initial confirmation hearing.  Reviewing the Standing Order will reduce the risk

8    of failure in this chapter 13 bankruptcy case.

9

10        <u>Amendments to National and Local Bankruptcy Rules</u>.  Certain revisions to the national

11   and local bankruptcy rules became effective on December 1, 2017.  In response, the Court

12   hereby orders as follows.  As in the past, the Court's Standing Order continues to apply to all

13   chapter 13 cases including this one.

14

15        As in the past, parties should continue to comply with the deadline in section (G)(1) of

16   the Standing Order when filing motions to avoid liens pursuant to sections 506 or 522 of the

17   Bankruptcy Code.[5]

18

19        As in the past, payments to secured creditors (conduit versus direct payments) shall be

20   governed by section J of the Standing Order.[6]

21

22        As in the past, the Court shall continue to prepare confirmation orders and provide them

23   to all parties at the status conference for full review prior to entry.[7]  As in the past, the

---

24        [5] To the extent, if any, that revised LBR 3015-1(b)(7) (or any other local rule) provides otherwise, the
25   Court opts out of such provisions pursuant to LBR 1002-1(d).

26        [6] To the extent, if any, that revised LBR 3015-1(m) (or any other local rule) provides otherwise, the Court
     opts out of such provisions pursuant to LBR 1002-1(d).

27        [7] To the extent, if any, that revised LBR 3015-1(d)(2) (or any other local rule) provides otherwise, the
28   Court opts out of such provisions pursuant to LBR 1002-1(d).

confirmation order will continue to provide (among other things) that the debtors "must pay the base plan amount or the percentage to unsecured creditors, whichever is greater."

On March 23, 2015, the Court posted optional procedures regarding compensation to counsel for chapter 13 debtors (which are commonly referred to as "no-look" fee procedures). As in the past, parties may continue to use those optional procedures, if desired.  Any attorney who does not wish to use those optional procedures shall (1) deposit all retainers and other payments for fees and costs received from each chapter 13 debtor in a separate attorney trust account that does not co-mingle such funds with funds in other chapter 13 bankruptcy cases pending further order of the Court[8] and (2) file[9] a normal fee application that complies with the Bankruptcy Code and all national and local rules governing the preparation of fee applications.[10]

Debtors shall file and serve the notice required by F.R.B.P. Rule 2002(a)(9) not less than thirty-five days prior to the confirmation hearing.[11]

As in the past, debtors shall continue to file with the Court and submit to the chapter 13 trustee, no later than seven days prior to the meeting of creditors, the declaration regarding filing

---

[8] The deadline for making each deposit is seven days after the later of (a) the date the attorney receives the retainer or payment of fees from the debtor or (b) entry of this order.

[9] Unless the Court directs otherwise during the case, the fee application may be filed at any time while the chapter 13 case is pending.  Among other things, the fee application shall provide evidence that all retainers and other funds paid by the chapter 13 debtors to counsel have been deposited in a client trust account and are being held there.

[10] This sentence and the preceding two footnotes do not apply to any attorney who wishes to use the optional procedures in the Court's guidelines dated March 23, 2015.

[11] As stated above, certain objections to confirmation of a chapter 13 plan may be made orally at a status conference or a confirmation hearing.  In all other instances, pursuant to revised LBR 3015-1(g)(1), objections to confirmation of a plan shall be filed and served fourteen days prior to the confirmation hearing (unless the Court sets a different schedule at the status conference or otherwise).  In addition, pursuant to Rule 2002(a)(9) of the Federal Rules of Bankruptcy Procedure, debtors shall provide notice of not less than twenty-one days of the fourteen day deadline to object to confirmation.  Accordingly, debtors shall file and serve the notice required by Rule 2002(a)(9) not less than thirty-five days prior to the confirmation hearing.  Given the recent amendments to the national and local rules, the notice provisions in this paragraph of this order supersede any different periods discussed in the attached Standing Order.

1    of tax returns and payment of domestic support obligations (preconfirmation).

2    IT IS SO ORDERED.

3

4                                              ###

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: June 3, 2024

25                                          Wayne Johnson
                                           United States Bankruptcy Judge
26

27

28

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

In re:

**PROCEDURES FOR CHAPTER 13 CASES ASSIGNED TO JUDGE JOHNSON**

**STANDING ORDER REGARDING PROCEDURES FOR CHAPTER 13 CASES ASSIGNED TO JUDGE JOHNSON**

- 1 –

1    This standing order sets forth procedures governing chapter 13 cases assigned to

2    Judge Johnson.  This standing order applies to all chapter 13 cases assigned to Judge Johnson

3    filed on or after January 1, 2013 or converted to chapter 13 on or after January 1, 2013.[1]  Counsel

4    for chapter 13 debtors should promptly provide debtors with a copy of this order and confer with

5    debtors regarding its contents.  The chances of debtors succeeding in a chapter 13 case will

6    substantially increase if the debtors and their counsel promptly review this order and comply

7    with its terms.

8    This standing order is designed to assist chapter 13 debtors in succeeding in chapter 13

9    cases.  It provides debtors and their counsel with important information necessary to succeed in

10   chapter 13 cases.  It covers key provisions of the local bankruptcy rules ("LBR"), the Bankruptcy

11   Code and the Federal Rules of Bankruptcy Procedure ("F.R.B.P.") governing chapter 13 cases.

12   The order also identifies common errors by chapter 13 debtors that result in dismissal of

13   chapter 13 cases at confirmation hearings.

14

15   **I.      INTRODUCTION.**

16       **A.      Local Bankruptcy Rule 3015-1.**

17   The starting place for any chapter 13 case in the Central District of California is

18   LBR 3015-1.  The local bankruptcy rules contain numerous provisions governing chapter 13 and

19   a substantial portion of those provisions are located in LBR 3015-1.  The Court[2] extensively

20   revised its local rules effective as of January 2, 2013 (including LBR 3015-1) and, therefore, all

21   chapter 13 debtors and their counsel should review revised LBR 3015-1 as well as the provisions

22   of this order.  Most (but not all) provisions of revised LBR 3015-1 shall apply in chapter 13

23

24   _____

25       [1] This standing order does not apply to cases not assigned to Judge Johnson.

26       [2] In this order, unless the context indicates otherwise, the phrase "The Court", "the Court" and "the Court's"
     refers to the United States Bankruptcy Court for the Central District of California.  Lowercase references such as "the
27   court" refers to Judge Johnson or to bankruptcy courts in general (depending on the context).  Lowercase references to
     "court" such as "the court" are never intended to refer to the entire United States Bankruptcy Court for the Central
28   District of California or any of its judges other than Judge Johnson.

1    cases assigned to Judge Johnson.[3]

2        LBR 3015-1 contains many requirements for chapter 13 cases and the rule provides for

3    dismissal of a chapter 13 case when debtors fail to timely comply.[4]  Debtors who wish to avoid

4    dismissal of their case need to timely comply with all requirements in chapter 13 including, but

5    not limited to, the provisions of LBR 3015-1 and this order.

6

7        **B.        Variances in Local Practices and Customs.**

8        Chapter 13 practices vary throughout the country and, as discussed in LBR 3015-1(d)(1),

9    chapter 13 practices in this district vary from judge to judge.  Some judges consistently enforce

10   the LBRs and others only enforce some of the rules.  This order is designed to provide guidance

11   for handling chapter 13 cases assigned to Judge Johnson.  This order has been designed to help

12   the debtors avoid the most common problems that arise in chapter 13 cases which result in

13   dismissal of chapter 13 cases.

14       For several years, much of the information in this order has been provided by posting

15   guidelines on the Court's website and discussing chapter 13 procedures at educational programs.

16   However, some attorneys and debtors still appear to have difficulty succeeding in chapter 13

17   cases.  The court hopes that by issuing this standing order for all chapter 13 cases, all chapter 13

18   debtors and their counsel will have greater knowledge of the deadlines and procedures affecting

19   chapter 13 cases, the criteria necessary for success and the consequences of not meeting the

20   deadlines or following the procedures.

21

22

23   _____

24       [3] To the extent that any local bankruptcy rule is inconsistent with the provisions of this standing order, the
     application of such LBRs is hereby waived pursuant to LBR 1001-1(d).  The provisions of this standing order shall
     control over any and all inconsistent provisions in the LBRs.

25       [4] See, e.g., LBR 3015-1(b)(1) ("[I]f the missing documents are not filed within 14 days from the date of the
26   filing of the petition, the court may dismiss the case . . . ."); LBR 3015-1(c)(6)(C) ("If the debtor fails to comply with
     any of the requirements of subsection (c) of this rule, such failure may result in . . . (C) Dismissal of the case . . . .");
27   LBR 3015-1(h)(1) ("Failure to comply with these requirements may result in . . . dismissal of the case."); LBR 3015-
     1(k)(4) ("If the debtor fails to make a plan payment, the case may be dismissed . . . ."); LBR 3015-1(m)(7) ("Failure to
28   make all of the payments required by subsection (m)(2) or (3) of this rule in a timely manner will generally result in
     dismissal of the case.").

- 3 –

1    **C.      Errors, Omissions and Other Problems with the LBRs and Forms.**

2          This order is also necessary because the LBRs (while well-written in general) are not

3    always internally consistent or consistent with the national rules governing chapter 13 cases.[5]  In

4    some instances, the LBRs conflict with the national rules,[6] each other,[7] Ninth Circuit law[8] or loan

5    documents.[9]  One local rule manipulates provisions in loan documents to create two different

6    chapter 13 due date rules.[10]  The LBRs also do not provide guidance regarding certain issues,

7    deadlines or procedures[11] and, in some instances, the LBRs set traps that sometimes ensnare

8    chapter 13 debtors.[12]  Likewise, inaccurate or misleading information appears in some of the

9    Court's chapter 13 forms[13] and one LBR refers to a form that no longer exists.[14]

10          This order is designed to provide information, solutions and guidance regarding the

11

12    _____

13          [5] As discussed in this order, LBR 3015-1(g)(1) and LBR 3015-1(b)(3) are not consistent with
F.R.P.B. 2002(b)(2).

14          [6] As discussed in this order, LBR 3015-1(w)(1)(C) conflicts with F.R.B.P. 2002(a)(2) and LBR 3015-1(x).
15    Likewise, LBR 3015-1(x)(3)(B) conflicts with F.R.B.P. 3015(g).

16          [7] As discussed in this order, LBR 3015-1(w)(1)(C) conflicts with F.R.B.P. 2002(a)(2) and LBR 3015-1(x).
LBR 3015-1(g)(1) and 3015-1(g)(2)(B) are also mutually exclusive.  The last sentence of LBR 3015-1(b)(3) conflicts
17    with the first sentence of LBR 9013-3(a).

18          [8] LBR 3015-1(q)(1)(A) conflicts with <u>Rosson v. Fitzgerald (In re Rosson)</u>, 545 F.3d 764, 775 (9th Cir. 2008).

19          [9] LBR 3015-1(m)(4) purports to modify the due date for post-petition mortgage payments for all post-petition
payments other than the Filing Month Payment.  The terms of the underlying loan documents are honored only with
20    respect to the Filing Month Payment.

21          [10] <u>See</u> discussion of LBR 3015-1(m)(4) below.

22          [11] The LBRs do not provide any guidance regarding when a chapter 13 debtor should file a motion to value
real property or a motion to avoid a lien pursuant to 11 U.S.C. § 522(f).  The LBRs do not provide any guidance
23    regarding the timing of the filing of a motion to modify a chapter 13 plan when a debtor seeks to defeat a motion by the
trustee to dismiss the case.  The LBRs fail to clearly indicate when a request by a debtor to dismiss a chapter 13 case is
24    effective.

25          [12] The LBRs contain provisions that create at least two traps into which chapter 13 debtors frequently find
themselves ensnared.  First, as discussed below, the local rules allow debtors to file proofs of service fourteen days
26    prior to the confirmation hearing instead of attaching them to the notice of the confirmation hearing.  Second, as
discussed below, the LBRs fail to clearly indicate when a request by a debtor to dismiss a chapter 13 case is effective.

27          [13] See discussion below regarding form F 3015-1.02.NOTICE.341.CNFRM.

28          [14] LBR 3015-1(b)(3) refers to form F 3015-1 which no longer exists.

- 4 –

1    known problems in the LBRs.[15]

2

3    **II.      GOOD FAITH, BAD FAITH, VIABLE AND NONVIABLE CASES.**

4          **A.      The Failure Rate of Chapter 13 Cases.**

5          As a statistical matter, chapter 13 cases fail considerably more often than they succeed.[16]

6    Nationwide, only one-third of chapter 13 cases succeed.[17]  Only one in three debtors nationwide

7    actually makes all the required plan payments which means two-thirds (67%) of chapter 13

8    cases fail nationwide.[18]  This rate of failure has "persisted for more than thirty years" and has

9    led one professor to refer to chapter 13 as the "pretend solution . . . a social program that does

10   not work as intended but is not critiqued or reformed because its flaws are hidden."[19]

11         In the Central District of California, however, the data is worse.  A review of the Court's

12   records a few years ago indicated that only 3% of chapter 13 cases in this district resulted in a

13   completed plan with chapter 13 debtors making all plan payments.  In 97% of chapter 13 cases,

14   debtors fail to make all payments required under their proposed plans.

15         In this division - the Riverside Division - the failure rate is not quite 97% but still far

16   above the national average of 67%.  The chapter 13 standing trustee in this division has

17   calculated that 92% of all chapter 13 cases fail (i.e., fail to result in a confirmed and fully

18   performed chapter 13 plan).  The failure rate of 92% rises to nearly 100% for chapter 13 cases in

19   which the debtor is not represented by an attorney.  In other words, nearly every case filed by a

20   chapter 13 debtor who does not have an attorney fails given the many requirements necessary to

21   ───────────────────

22         [15] To the extent that counsel can identify other problems with the LBRs, they should feel free to mention them

23   to the court at the confirmation hearing, educational forums or other similar opportunities.  One of the primary goals of
     the court is to maintain and utilize clear procedures in chapter 13 cases.

24         [16] Katherine Porter, "The Pretend Solution: An Empirical Study of Bankruptcy Outcomes", 90 Texas Law

25   Review 103, 107-08 (November 2011).

26         [17] Id. at 107 ("Their most controversial finding was that only one in three cases filed under Chapter 13 ended
     in a completed payment plan.").

27         [18] Id. at 113.

28         [19] Id.

1    successfully complete a chapter 13 case.

2         According to the Court's own records, approximately 44% of all chapter 13 cases in this

3    division of this district are filed by debtors who lack counsel and nearly 100% of these cases fail.

4    Debtors who file the other 56% of chapter 13 cases are represented by counsel but those cases

5    fail at the rate of approximately 86%. This means that only 14% of chapter 13 cases involving

6    attorneys succeed and virtually 0% of chapter 13 cases filed by unrepresented debtors succeed.

7    Thus, while nationwide about two-thirds (67%) of all chapter 13 cases fail, the failure rate in this

8    division is twenty-five percentage points higher at 92%. In other words, the success rate of

9    chapter 13 cases nationwide (33%) is four times higher than in this division (8%).

10

11         **B.      Good Faith Versus Bad Faith.**

12         With 92% of chapter 13 cases failing in this division and two-thirds throughout the

13    country, chapter 13 consumes considerable resources (in the form of attorneys' fees, judicial

14    resources and the finances and hopes of debtors) with limited results. One of the initial

15    challenges for every bankruptcy court is to sort out the chapter 13 cases filed in bad faith from

16    the cases filed in good faith. With respect to the former, many chapter 13 cases filed by debtors

17    who do not employ counsel are filed solely to stop an eviction. Non-paying tenants can obtain

18    an automatic stay of an eviction merely for the price of the filing fee and chapter 13 offers a low

19    filing fee[20] and the fewest entanglements.[21] A bankruptcy case filed to delay an eviction is not

20

21    _____

22         [20] Effective as of November 21, 2012, the filing fee for a chapter 13 case is $281 compared with $306 for
      chapter 7 or $1,213 for chapter 11. Only chapter 12 offers a lower filing fee ($246).

23         [21] Obtaining dismissal or conversion of a chapter 13 case is usually much easier than in chapter 7 or
      chapter 11. Dismissing or converting a chapter 7 or chapter 11 case requires a motion and a hearing (which are often
24    opposed). Whereas requests to dismiss or convert a chapter 13 case are often processed with no hearing and no
      opposition. Chapter 7 trustees and creditors oppose dismissal or conversion of chapter 7 cases far more often than
25    chapter 13 trustees or creditors oppose dismissal or conversion of chapter 13 cases.
           In addition, in chapter 7 cases, the chapter 7 trustee retains all rights and powers of a trustee. However, in
26    chapter 13 cases, debtors exclusively retain certain powers pursuant to section 1303 or section 1304. Other trustee
      powers are often shared with the chapter 13 debtor. See e.g., In re Cohen, 305 B.R. 886 (9th Cir. BAP 2004) (discussing
27    concurrent standing in certain circumstances).
           In summary, a debtor maintains more control in chapter 13 than chapter 7 and a chapter 13 debtor can more
28    easily terminate a chapter 13 case than a chapter 7 case.

- 6 –

filed in good faith.[22]  But while filing a chapter 13 case to stop an eviction is improper, it is often

effective in delaying the eviction.  It can take several weeks (or months) before the case is

dismissed or the landlord obtains relief from stay.  For some debtors, this delay is well worth

paying the filing fee.

Indeed, filing a chapter 13 case to stop an eviction is sometimes so attractive that criminal

schemes occasionally arise involving chapter 13 cases.  For nearly a year, scores of chapter 13

cases were filed in this division by debtors (some real and some fictitious) using identical

schedules.  In the so-called "Castillo Barber Salon" cases, bankruptcy schedules were simply

copied from a prior case and used repeatedly in dozens of other cases.  This device resulted in

the delay of numerous foreclosure sales and evictions.

For this reason (and many others), bankruptcy law requires debtors to disclose the filing

of prior bankruptcy cases.  Both the second page of the petition and the Rule 1015-2 statement

require debtors to disclose prior bankruptcy cases.  Honest and complete disclosure of prior

bankruptcy cases is a crucial requirement to sort out the cases filed in good faith from the cases

filed in bad faith.  Chapter 13 debtors and their counsel need to ensure that all required

disclosures are made.

The failure to disclose all prior bankruptcy cases usually results in the dismissal of a

chapter 13 case.  Typically the dismissal occurs at the confirmation hearing and at the request of

the chapter 13 trustee.  Pursuant to sections 1307(c) and 105(a), a bankruptcy court also has the

power to dismiss or convert a case on its own motion.[23]

In order to avoid dismissal of a chapter 13 case at the confirmation hearing, debtors and

their counsel need to ensure that all prior bankruptcy cases are properly and timely disclosed.

---

[22] See, e.g., In re Smith, 105 B.R. 50, 53 & 55 (Bankr. C.D. Cal. 1989) (describing bankruptcy cases filed to delay an eviction as "abusive" and designed to "delay improperly the landlord from obtaining possession of his property.").

[23] See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 771 n.8 (9th Cir. 2008) ("Although the statute provides for conversion "on request of a party . . . or the . . . trustee," 11 U.S.C. § 1307(c), there is no doubt that the bankruptcy court may also convert on its own motion. See id. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").").

1    The petition and the Rule 1015-2 statement are signed under penalty of perjury and, as with all

2    such documents, they need to be accurate.

3

4        C.        **Viable Cases Versus Nonviable Cases.**

5            After distinguishing the good faith cases from the bad faith cases, bankruptcy courts then

6    face another challenge.  Many cases filed in good faith are not viable.  Many chapter 13 debtors

7    simply lack the income to save their homes.  Many chapter 13 debtors fail to make mortgage

8    payments for several years and then file a bankruptcy case the day before a foreclosure sale.

9    Chapter 13 debtors cannot succeed when there has been no change in income and an arrearage of

10   twelve months, eighteen months, twenty-four months, forty-eight months or more has accrued.

11   Absent a loan modification or significant increase in the income of the debtors or a real decrease

12   in monthly expenses, these chapter 13 cases fail the feasibility test of section 1325(a)(6).

13           Sorting out the viable and nonviable cases and identifying the former can be challenging.

14   But there are measures that chapter 13 debtors and their counsel can take to help bankruptcy

15   courts identify the viable cases.  In order to distinguish between the viable and nonviable cases

16   (as well as the good faith and bad faith cases), full disclosure of financial information is

17   necessary.  Bankruptcy courts, chapter 13 trustees and creditors cannot make the best decisions

18   when debtors fail to provide all necessary documentation and information in a timely manner.

19   The LBRs repeatedly require timely and full disclosure and this order emphasizes these

20   requirements.

21           If debtors and counsel cannot meet the initial deadlines leading up to confirmation, there

22   is little hope that they will be able to do so post-confirmation.  Therefore, meeting the pre-

23   confirmation deadlines is one of the first tests in a chapter 13 case.  The cases in which timely

24   compliance with the initial deadlines occurs may flourish, while those cases in which deadlines

25   are missed will not endure.

26           The failure to timely deliver or timely file documents (including proofs of service) will

27   usually result in the dismissal of a case.  Also, debtors should timely make all plan payments and

28   all secured debt payments.  Failure to timely make required payments will usually result in the

1    dismissal of a case.

2

3    **III.      PRE-CONFIRMATION MATTERS.**

4         LBR 3015-1 establishes many pre-confirmation requirements.  Attention to those

5    requirements and, in particular, the matters discussed below, will enhance the chances of debtors

6    achieving success in chapter 13 cases.

7

8         **A.      Deadline to File All Case Initiation Documents.**

9         LBR 3015-1(b)(1) & (2) pertain to motions to extend the time to file case initiation

10   documents.  As a practical matter, these motions are rarely granted in chapter 13 cases.

11   Extending the fourteen day deadline would unfairly affect other parties involved in the case.[24]  In

12   addition, in most instances, extension of the fourteen day deadline would be impractical and run

13   afoul of other deadlines in the case.[25]  Therefore, debtors in cases governed by this standing

14   order must file the petition, schedules, chapter 13 plan and all other case initiation documents on

15   the petition date or, at the latest, fourteen days thereafter pursuant to F.R.B.P. 1007(c).

16

17

18   _____

19       [24] Bankruptcy law requires debtors to file complete schedules identifying all assets, debts and other financial

20   matters in order to provide information to creditors and the bankruptcy court to evaluate for numerous reasons
     including, but not limited to, (1) whether the bankruptcy case has been filed in good faith, (2) whether an objection to
     the discharge of a debt is warranted, (3) whether an objection to the dischargeability of a debt is appropriate, (4)

21   whether exemptions asserted are valid and (5) to evaluate whether the debtor has proposed a viable plan and whether
     the plan treats creditors properly in a chapter 13 case.  Various deadlines exist (many of them quite short) for

22   creditors, the trustee and the Office of the United States Trustee to take action in a bankruptcy case (i.e. object to
     discharge, object to the dischargeability of debt, object to a plan) and those parties are prejudiced by delays in the

23   submission of complete and accurate schedules.  Extending the deadline to file case initiation documents would
     reduce the already brief period of time that many parties-in-interest have to take action in a case.  Therefore, it is

24   important that debtors file full and complete schedules with their petition or, at the latest, within fourteen days
     thereafter to avoid prejudice to other parties.

25
         [25] Pursuant to LBR 3015-1(b)(3), the "debtor must serve a notice of the hearing on confirmation of debtor's

26   chapter 13 plan, along with a copy of the chapter 13 plan, on all creditors and the chapter 13 trustee at least 28 days
     before the date first set for the § 341(a) meeting of creditors, using the court-mandated F 3015-1 form."  In light of

27   the provisions of this rule, granting an extension in chapter 13 cases to file schedules and other documents is usually
     impractical because, in most chapter 13 cases, insufficient time will exist for a debtor to comply with the service

28   requirements of Rule 3015-1(b)(3) if the fourteen day deadline to file missing schedules and documents is extended.

**B.**      **Providing Notice and Service of Chapter 13 Plan and Confirmation Hearing.**

All debtors should review LBR 3015-1(b)(3).  That rule requires debtors to serve on all creditors and the chapter 13 trustee a notice of the chapter 13 confirmation hearing using local form F 3015-1.02.NOTICE.341.CNFRM.[26]  That form is required by LBR 3015-1(b)(3) and the rule also requires all debtors to attach their proposed chapter 13 plan to the form.  Debtors must fill out the form completely and provide with accuracy all required information including, but not limited to, the correct dates, times and locations for the meeting of creditors, the confirmation hearing and the deadline to oppose confirmation.  Many bankruptcy cases are dismissed at the confirmation hearing because debtors fail to (a) timely file and serve notice using form F 3015-1.02.NOTICE.341.CNFRM, (b) properly fill out the notice with the correct information, (c) attach a complete copy of the chapter 13 plan to the notice, (d) timely and properly serve the notice and plan, (e) timely submit a proof of service of the notice and chapter 13 plan[27] or (f) properly serve the notice and plan at least twenty-eight days[28] prior to the first date set for the meeting of creditors.

---

[26] A copy of F 3015-1.02.NOTICE.341.CNFRM is available on the Court's website using the following link: http://www.cacb.uscourts.gov/sites/cacb/files/documents/forms/F3015-1.02NOTICE341CNFRM.pdf.  If for any reason this link does not work, the form can be obtained from the Court's website at http://www.cacb.uscourts.gov/. Select the heading "Forms" on the main page and the subheading "Local Bankruptcy Rules Forms" on the drop down menu.  A list of all the Court's local bankruptcy rule forms will appear.

[27] LBR 3015-1(b)(3) requires service of form F 3015-1.02.NOTICE.341.CNFRM and the chapter 13 plan at least twenty-eight days prior to the meeting of creditors but the last sentence of LBR 3015-1(b)(3) provides that the proof of service of the form and plan need only be filed fourteen days prior to the meeting of creditors.  This means that LBR 3015-1(b)(3) does not require that the proof of service be attached to the notice and plan.  However, this provision directly conflicts with LBR 9013-3(a) which states that a "proof of service must be attached as the last page of the document filed."  Therefore, chapter 13 debtors and their counsel should follow LBR 9013-3(a), not the last sentence of LBR 3015-1(b)(3).

The last sentence of LBR 3015-1(b)(3) is unwise.  Pursuant to LBR 9013-3(a), nearly every pleading filed with the Court has a proof of service attached to it.  This practice has three advantages.  First, it allows the Court to quickly find the proof of service.  It can be difficult to locate a proof of service when it is not attached to the served document.  Filing a proof of service separately from the served document is not ideal.

Second, it is rare that the proof of service is filed timely if it is not attached to the served document.  In other words, if the proof of service is not filed with the served document, the proof of service is usually forgotten and not filed until the day of (or the day before) the meeting of creditors or confirmation hearing.  As a practical matter, the fourteen day deadline in the last sentence of LBR 3015-1(b)(3) is rarely useful and functions more like a trap for debtors (and their counsel) who are insufficiently diligent.

Third, preparing and signing a proof of service concurrently with accomplishing the service is the most credible practice.  When parties file a proof of service that is prepared, signed and filed weeks after the purported date of service, it raises a question about its accuracy.  How can a person who signs a proof of service stating that weeks earlier they served twenty or thirty addresses be certain that they served the specific twenty or thirty addresses on the

In addition, when a debtor has recently filed more than one bankruptcy case, the Court prefers that the same judge handle all recent cases. Therefore, when necessary, the clerk of the Court will reassign the most recent bankruptcy case from one judge to another to ensure that the same judge handles all recent cases filed by the same debtor. Reassignment typically occurs within a week of the petition date.

As a result, when a case has been reassigned from another judge, it is possible that the clerk of the Court initially provided (upon the filing of the case) dates and times for the meeting of creditors and the confirmation hearing for the prior judge. If so, those dates no longer apply. Upon reassignment, new dates and times are reflected on the docket.

If counsel for the debtors previously served form F 3015-1.02.NOTICE.341.CNFRM and the chapter 13 plan using the original inapplicable dates, counsel for the debtors should immediately serve form F 3015-1.02.NOTICE.341.CNFRM and the chapter 13 plan again using the new dates and times. Failure to timely and properly serve form F 3015-1.02.NOTICE.341.CNFRM and the chapter 13 plan generally results in dismissal of the case at the confirmation hearing even if the case has been reassigned. Rule 3015-1(b)(3) is only satisfied when the debtors file and serve the notice and plan using the correct dates and times. If a chapter 13 case has been reassigned, debtors should immediately review the docket and ensure that they timely serve form F 3015-1.02.NOTICE.341.CNFRM with the chapter 13 plan using the correct information.

Finally, the version of form F 3015-1.02.NOTICE.341.CNFRM released by the Court in December of 2012 is incorrect. Both the current form and its predecessor indicate that meetings of creditors in chapter 13 cases in Riverside occur at the Courthouse at 3420 Twelfth Street,

---

proof of service? The envelopes are no longer available to double-check (because they were mailed weeks earlier). Preparing a proof of service days or weeks after the date of service raises questions that are entirely avoidable.

    The better course of practice is to simply file the proof of service attached to the form notice and plan. The form notice includes a proof of service and is designed to be filed with the notice. It allows the court and the trustee to quickly find the proof of service, provides the court and the trustee with sufficient time to review it and avoids raising any doubts about the accuracy of the proof of service.

[28] F.R.B.P. 2002(b) requires twenty-eight days of notice of a confirmation hearing in chapter 13 cases. Bankruptcy cases are dismissed at the confirmation hearing when debtors provide less than twenty-eight days notice. To avoid this problem, debtors should make sure they timely serve the required notice.

1    Riverside, California.[29]  However, in most instances, that is not correct.  In most cases, the

2    meetings of creditors occur at the Office of the United States Trustee at 3801 University Avenue,

3    Riverside, California 92501.  Always use the information provided by the clerk of the Court on

4    the docket and interlineate form F 3015-1.02.NOTICE.341.CNFRM to provide the correct

5    address.  Until the Court fixes the form, chapter 13 debtors will need to revise it in every

6    chapter 13 case.[30]

7

8           **C.        Timely Provide Documents and Information to the Chapter 13 Trustee.**

9           Numerous provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy

10   Procedure and the local bankruptcy rules require debtors to provide the chapter 13 trustee with

11   various documents and information including, but not limited to, tax returns, evidence of income,

12   business records, bank statements, proof of post-petition payments and information regarding

13   domestic support obligations.  The disclosure requirements will be enforced.  Failure to timely

14   provide all documents and information will result in dismissal of the case.

15          In particular, chapter 13 debtors and their counsel should carefully review the provisions

16   of LBRs 3015-1(b)(6), 3015-1(c)(3), 3015-1(c)(4) and 3015-1(c)(5).  Cases are often dismissed

17   at the confirmation hearing due to a failure of debtors to timely provide the documents described

18   in these provisions.  Please note that not only must debtors provide all required documents and

19   information but they must also do so timely (usually at least seven days prior to the meeting of

20   creditors).  Delivering documents to the chapter 13 trustee at the meeting of creditors does not

21   comply with the local rules or the Bankruptcy Code.  Delivery at the meeting of creditors is also

22   not timely or fair to the trustee and other debtors, creditors and counsel.[31]  So the deadlines set by

23   _____

24          [29] The Court released the current version of form F 3015-1.02.NOTICE.341.CNFRM in December of 2012
which superseded the old form F 3015-1.2.  Like the current form, the old form F3015-1.2 also had the wrong

25   information.  These Court forms have been incorrect for the past four to five years.

26          [30] It is unclear if or when the Court will revise F 3015-1.02.NOTICE.341.CNFRM.  The error has been
brought to the attention of Court personnel and a request for correction has been made.

27          [31] In order to intelligently evaluate a chapter 13 case and conduct the meeting of creditors, the chapter 13
28   trustee needs time to review and analyze all required documents prior to the meeting of creditors.  When debtors do not
provide the required documents and information by the deadlines in the local rules and, instead, provide the documents

1   the local rules, the Bankruptcy Code and other applicable law will be enforced.

2          In addition, the evidence of income provided by debtors[32] must corroborate the

3   information listed on their Schedule I.  If the evidence of income is inconsistent with Schedule I

4   then the documents provided are insufficient and fail to comply with LBR 3015-1(c)(3).  Cases

5   are dismissed at the confirmation hearing when debtors fail to provide any income

6   documentation or fail to provide documentation consistent with Schedule I.  The income

7   information on Schedule I and the evidence of income must be consistent and accurate.  Any

8   amended Schedule I must be filed and served at least seven days prior to the meeting of creditors

9   and the confirmation hearing.[33]

---

and information at the meeting of creditors, the chapter 13 trustee does not have sufficient time to review them.  In addition, asking the chapter 13 trustee to review untimely documents at the meeting of creditors harms the other debtors, creditors and counsel who are waiting for their meetings of creditors on the same date and time.  An unprepared debtor cannot reasonably expect other debtors, creditors and counsel to wait for their meeting of creditors while the chapter 13 trustee reviews documents that were due seven days prior to the meeting of creditors.  The deadlines in the local rules for providing documents and information to the trustee are specifically designed to avoid these types of delays at meetings of creditors.  For these reasons, the court will enforce those deadlines.

[32] See, e.g., LBR 3015-1(c)(3).

[33] Under the local rules and as set forth in this order, evidence of income must be provided to the trustee at least seven days prior to the meeting of creditors.  If, at the same time, a debtor amends Schedule I at least seven days prior to the meeting of creditors (and the confirmation hearing) and timely provides corroborating documents to the trustee, the debtor may request that the court consider the amended Schedule I at the confirmation hearing.  Depending on whether and how the trustee objects, the court may consider the amended Schedule I.  However, if the debtor files an amended Schedule I less than seven days prior to the confirmation hearing, the court will typically sustain an objection by the trustee or other parties to the use of the amended Schedule I at the confirmation hearing.  In such cases, the court will rule at the confirmation hearing based on the original Schedule I because the amended Schedule I was not filed and served at least seven days prior to the confirmation hearing.  The court, creditors, the trustee and other parties in interest rely upon the accuracy of schedules filed by debtors when evaluating the chapter 13 plan and other aspects of the case.  Therefore, it is important that debtors exercise sufficient due care in preparing schedules and other documents filed with the court.
      And while bankruptcy law permits debtors to amend schedules, all schedules are filed under penalty of perjury.  So a debtor who carefully completes original schedules and signs them under penalty of perjury should rarely need to amend such schedules.  Amended schedules often indicate a lack of care in preparation of the original schedules.  Such a practice can result in dismissal of a case at the confirmation hearing because (1) the original documents were insufficiently accurate and (2) filing documents later in a case prejudices the ability of the interested parties to evaluate and respond to chapter 13 cases.

**D.      Appearances at the Meeting of Creditors and the Confirmation Hearing.**

As set forth in 11 U.S.C. § 341(a) and LBR 3015-1(c)(2), all debtors must appear at the meetings of creditors.  With respect to confirmation hearings, debtors need not appear[34] as long as their attorney appears (although it is often advantageous for debtors to also appear at the confirmation hearing with counsel).  A debtor who does not have an attorney must appear at the confirmation hearing.

Notwithstanding the provisions of LBR 3015-1(d) and the provisions of paragraph 5 of form F 3015-1.02.NOTICE.341.CNFRM and other provisions of LBR 3015-1, the chapter 13 trustee does not have the power to (a) excuse counsel or the debtors from appearing at the confirmation hearing or (b) continue the confirmation hearing.  However, the trustee may continue the meeting of creditors.

**E.      Objections to Plan.**

With respect to the deadline to object to a chapter 13 plan, the local rules are inconsistent.[35]  In addition, the local rules conflict with the national rules.[36]  Therefore, pursuant to LBR 3015-1(g)(2)(B), written or oral objections to chapter 13 plans in chapter 13 cases will be permitted at the meeting of creditors and the confirmation hearing.  This is the current custom and practice.  However, written objections seven days prior to the confirmation hearing (while

---

[34] In general, debtors are not required to appear at confirmation hearings except when they have no attorney or, as discussed later in this order, they file a last minute request to convert a case to chapter 7.

[35] LBR 3015-1(g)(1) states that all objections to chapter 13 plans "must be in writing" and must be filed and served at least seven days prior to the meeting of creditors.  However, LBR 3015-1(g)(2)(B) states that objections may be made orally at the meeting of creditors.  Therefore, LBR 3015-1(g)(2)(B) appears to undermine (if not entirely nullify) LBR 3015-1(g)(1).  LBR 3015-1(g)(1) and 3015-1(g)(2)(B) are mutually exclusive.

[36] F.R.B.P. 2002(b)(2) requires that creditors receive not less than twenty-eight days notice of the deadline to object to a chapter 13 plan (as well as the date and time of the confirmation hearing).  The LBRs, however, only require twenty-one days notice.  Specifically, LBR 3015-1(g)(1) states that all objections to chapter 13 plans "must be in writing" and must be filed and served at least seven days prior to the meeting of creditors but LBR 3015-1(b)(3) only requires a debtor to serve notice of the meeting of creditors twenty-eight days prior to the meeting of creditors.  Thus, these two rules only provide twenty-one days notice for objections to chapter 13 plans.  This does not provide the 28 days notice required under F.R.B.P. 2002(b)(2).  In order to comply with F.R.B.P. 2002(b)(2), the Court would need to modify the LBRs to either (a) change the twenty-eight day time period in LBR 3015-(b)(3) to at least thirty-five days or (b) eliminate the seven day deadline to object.

often not practicable[37]) are preferred when possible.

Pursuant to F.R.B.P. 2002(b)(2), debtors must provide not less that twenty-eight days notice to creditors of the deadline to object to a chapter 13 plan.  Most attorneys for debtors serve the required notice - form F 3015-1.02.NOTICE.341.CNFRM - within a week of the petition date which (in nearly all circumstances) will provide sufficient notice.

### F.    Surrender of Assets.

When preparing chapter 13 plans, debtors often propose to abandon overencumbered real property or other assets by surrendering them to creditors.  Paragraph V(D) of the Court's mandatory chapter 13 plan form (F 3015-1.01.CHAPTER13.PLAN) has a section for debtors to identify surrendered property and the creditors secured by the surrendered property.  LBR 3015-1(e)(2) also contains some language regarding surrender.  However, neither the form plan, LBR 3015-1(e)(2) nor the standard form of order confirming a chapter 13 plan grant relief from the automatic stay.  Although other bankruptcy courts in the country have addressed this issue in their model chapter 13 plans,[38] the forms and LBRs remain unchanged in this district.[39]

The failure to change the standard forms and LBRs means that the Court receives a fair

---

[37] LBR 3015-1(g)(1) states that all objections to chapter 13 plans "must be in writing" and must be filed and served at least seven days prior to the meeting of creditors.  The meeting of creditors, however, provides creditors with their first opportunity to examine debtors regarding their chapter 13 plan and financial affairs.  Therefore, objections to chapter 13 plans should not be due prior to the meeting of creditors.  The trustee, creditors and other parties should have the opportunity to examine debtors before the deadline passes to object to the chapter 13 plan.  Thus, the seven day deadline in LBR 3015-1(g)(1) is not procedurally fair to objecting parties.

[38] Other courts have drafted their model chapter 13 plans to include surrender language.  For example, in the United States Bankruptcy Court for the District of Utah, the model plan used in all cases filed on or after July 1, 2012 contains the following language in section 6(e): "(e) Surrender Of Collateral: The Debtors surrender the following collateral to the secured creditor. Upon entry of the confirmation order, the automatic stay of § 362 and the co-debtor stay of § 1301 are terminated as to such collateral, and the Debtors will immediately make the collateral available for repossession by the creditor."

In the United States Bankruptcy Court for the Eastern District of Michigan, the model plan (3.0) used in all cases filed on or after January 1, 2013 contains the following language in V(P): "P. SURRENDER OF COLLATERAL: Those claims that are treated pursuant to 11 USC §1325(a)(5)(C) (surrender of collateral) are so designated in this Plan. Upon confirmation, the Automatic Stay and Co-Debtor Stay is lifted as to the collateral and any creditor to whom the property is surrendered and the collateral shall no longer constitute property of the estate."

[39] This issue was brought to the attention of the Court in 2012 and, although some discussions occurred, no changes were made to the Court's form plan or confirmation order.

number of needless relief from stay motions.  If a debtor wishes to abandon property, the property should be deemed abandoned as of confirmation of the plan and the automatic stay terminated with respect to that property (as occurs in other judicial districts[40]).  The automatic stay should not prevent creditors from enforcing claims against property which the debtor voluntarily abandons and the failure to immediately grant relief from stay forces creditors to incur unnecessary expenses preparing, filing and prosecuting such motions.  The filing of these motions also wastes the time of the trustee, counsel for debtors and other parties who receive such motions and must review them, the confirmed plan and their case files to confirm that the parties previously agreed that the property should be abandoned.  And, of course, the process wastes Court resources (which are increasingly scarce).

Accordingly, when the court confirms a chapter 13 plan, all property which the debtor indicates shall be surrendered or abandoned including, but not limited to, property identified by the debtor in paragraph V(D) of the chapter 13 plan (collectively, the "Abandoned Assets") shall be deemed abandoned as of the date of entry of the confirmation order and the automatic stay shall be deemed lifted as to such property.  Any and all creditors may proceed with enforcing claims against Abandoned Assets as of the date of entry of the confirmation order.  The automatic stay shall be deemed lifted as to Abandoned Assets as of the date of entry of the confirmation order.  The confirmation order will contain this form of relief.

### G.    Valuation and Lien Avoidance Motions.

#### 1.    Procedure at the Beginning of the Case.

Some chapter 13 debtors seek to avoid mortgages or other liens pursuant to the provisions of 11 U.S.C. § 522(f) or 11 U.S.C. § 506(a).[41]  With respect to the latter valuation motions (also known as "lien strip motions," "motions to extinguish junior liens," "motions to value," "Lam

---

[40] See preceding two footnotes.

[41] Applicable law currently provides that a chapter 13 debtor may avoid a junior lien on the debtor's residence under certain circumstances. Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1227 (9th Cir. 2002); Lam v. Investors Thrift (In re Lam), 211 B.R. 36, 41 (9th Cir. BAP 1997), appeal dismissed, 192 F.3d 1309 (9th Cir. 1999).

1    motions," etc.), Judge Johnson has posted extensive guidelines regarding valuation motions.[42]

2    Please review those guidelines before filing a valuation motion.[43]

3         The LBRs do not provide guidance regarding valuation motions.  Most importantly, the

4    LBRs do not set a deadline for filing such motions.  However, local bankruptcy rules in other

5    districts do address valuation motions.  For example, the United States Bankruptcy Court for the

6    Eastern District of California has a local bankruptcy rule that requires debtors to file valuation

7    motions sufficiently in advance of a confirmation hearing so that the motions can be resolved

8    "before or in conjunction with the confirmation of the plan."[44]  The local rule also provides that

9    if "a motion is not filed, or it is unsuccessful, the Court may deny confirmation of the plan."[45]

10   This time parameter makes sense and shall apply.

11        Chapter 13 debtors must file and serve all valuation motions and motions to avoid a lien

12   pursuant to section 522(f) in such a manner so that the hearings regarding the motions occur on

13   regular notice no later than the initial confirmation hearing.  This deadline applies to both real

14   property and personal property.  If, for example, a debtor intends to "cramdown" a creditor

15   holding a lien against a vehicle (or other personal property) to reduce the amount of the

16   creditor's secured claim or lien or otherwise attempt a "lien strip" of any kind in chapter 13, the

17   debtor must file and serve a valuation motion with respect to that creditor and its collateral in

18   such a manner so that the motion is timely heard on or before the date of the initial confirmation

19   _____

20   [42] Judge Johnson's guidelines for valuation motions are available on the Court's website using the following
     link: http://www.cacb.uscourts.gov/sites/cacb/files/documents/judges/instructions/WJ_Chapter%2013%20Guidelines-

21   Motions%20to%20Value.pdf.  If for any reason this link does not work, the guidelines can be found on the Court's
     website at http://www.cacb.uscourts.gov/.  Select the heading "Judges" on the main page and then on the next page

22   click on "Johnson, W" and then on the next page click on the subheading "Instructions/Procedures".  Then click on the
     link entitled "Chapter 13 - Guidelines Regarding Valuation Motions".

23
     [43] See preceding footnote.

24
     [44] Local Bankruptcy Rule 3015-1(j), United States Bankruptcy Court, Eastern District of California:

25   "Valuation and Lien Avoidance Motions. If a proposed plan will reduce or eliminate a secured claim based on the
     value of its collateral or the avoidability of a lien pursuant to 11 U.S.C. § 522(f), the debtor must file, serve, and set for

26   hearing a valuation motion and/or a lien avoidance motion. The hearing must be concluded before or in conjunction
     with the confirmation of the plan. If a motion is not filed, or it is unsuccessful, the Court may deny confirmation of the

27   plan."

28   [45] Id.

1    hearing.

2

3                    **2.        Procedure at the End of the Case.**

4            If a valuation motion is granted at the beginning of the case, the relief granted is

5    conditional.  A chapter 13 debtor must still perform under the terms of the confirmed plan.  If a

6    chapter 13 debtor fulfills all obligations under the chapter 13 plan and obtains a discharge, the

7    debtor may obtain an unconditional order avoiding the lien.  Pursuant to F.R.B.P. 7001(2), an

8    adversary proceeding is necessary to obtain an order avoiding the lien and declaring it

9    unconditionally invalid.[46]

10           Judge Johnson's valuation motion guidelines (referenced above) discuss the applicable

11   procedure.  Please review those guidelines before filing either a valuation motion (at the

12   beginning of the case) or an adversary proceeding (at the end of the case).

13

14           **H.       Request to Dismiss a Chapter 13 Case.**

15           When preparing for confirmation hearings, debtors sometimes decide to dismiss their

16   bankruptcy case.  Unfortunately, the LBRs are insufficiently clear which causes some debtors to

17   fall into a trap.[47]  Under the LBRs, a request to dismiss in chapter 13 is **not** immediately effective

18   (nor could it be).[48]

19           Under Ninth Circuit law, a chapter 13 debtor does not have an absolute right to dismiss a

20   chapter 13 case.[49]  Therefore, the LBRs do not (and cannot) provide for immediate dismissal of a

21   _____

22           [46] Although Rule 7001(2) currently requires an adversary proceeding to extinguish a lien (except pursuant to
     section 522(f)), at least one national rules committee is analyzing amendments to the rules which would permit

23   chapter 13 debtors to extinguish liens by motion.  Therefore, depending on whether the rules are amended and whether
     any amendments are applied retroactively, it is possible that an adversary proceeding may not be required at the end of

24   the case.  Unless and until the rules are changed, Rule 7001(2) requires an adversary proceeding.

25           [47] LBR 3015-1(q)(1)(A) sets forth the procedure for filing a request to dismiss but it does not state when the
     dismissal is effective.  The rule should contain a warning that the dismissal is not effective unless or until the Court

26   grants the dismissal and, pending such action, the debtors must continue to comply with all requirements of chapter 13.
     The failure to include this cautionary language has trapped some chapter 13 debtors and their counsel.

27           [48] See preceding footnote.

28           [49] See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764 (9th Cir. 2008).

chapter 13 case.  Instead, a request to dismiss a chapter 13 case is not effective unless and until the court acts upon the request and dismisses the case.

In most cases, the bankruptcy court will dismiss the case upon receiving a request to dismiss from the debtor.  In some limited instances, however, a hearing regarding the request will be necessary. Either way, simply filing the request for dismissal is not sufficient.  A chapter 13 case is not dismissed unless and until the bankruptcy court acts upon the request and dismisses the case.

A problem often arises when some chapter 13 debtors decide on the day of a meeting of creditors and a confirmation hearing to dismiss their case.  They file the request for dismissal that morning or late the preceding day.  In some instances, they then abandon the entire chapter 13 process (under the assumption dismissal is immediately effective upon filing the request) and fail to appear at meetings of creditors or confirmation hearings.  Often, neither the trustee nor the bankruptcy court is even aware of the request for dismissal.  The trustee then requests dismissal but with a 180-day bar to re-filing pursuant to section 109(g)(1) because neither the debtors nor their counsel appeared at a meeting of creditors or a confirmation hearing.

To avoid this result, debtors and their counsel must continue to comply with all requirements of chapter 13 (including, but not limited to, appearing at meetings of creditors and confirmation hearings) unless and until the case is actually dismissed.  Filing a request to dismiss does not relieve the debtors or their counsel of any obligations in any chapter 13 case.  If they file a request to dismiss but fail to appear at a meeting of creditors or a confirmation hearing, the case will be dismissed with a 180-day bar to re-filing pursuant to section 109(g)(1).

The court, the trustee and creditors all spend considerable time preparing for meetings of creditors and confirmation hearings.  For this reason, it is not appropriate for debtors and counsel to fail to appear at meetings of creditors or confirmation hearings.  If a debtor wants to dismiss a chapter 13 case, the request for dismissal should be filed and served on all creditors at least a week in advance of the meeting of creditors.  This provides sufficient advance time for the court to review and process the request to dismiss.  It also helps the trustee, creditors and the court avoid wasting time, attorneys' fees and other resources preparing for meetings of creditors and

1    confirmation hearings.  Advance notice also assists the court in distinguishing between the

2    chapter 13 cases filed in good faith and the ones filed in bad faith.[50]

3          The court recognizes that, in some cases, last minute decisions to dismiss are unavoidable

4    even in cases filed in good faith.  In those cases, debtors should file their request to dismiss but

5    they must still appear at the meeting of creditors.  Sending their attorney to the meeting of

6    creditors to advise the trustee of the request to dismiss is not sufficient.[51]

7          Instead, all chapter 13 debtors and their counsel must appear at meetings of creditors (and

8    counsel must appear at confirmation hearings) unless the court has actually dismissed the case

9    prior to a meeting of creditors or a confirmation hearing.  Failure to appear at meetings of

10   creditors or confirmation hearings will result in dismissal of cases with a 180-day bar to re-filing

11   regardless of whether or not the trustee and/or the court receive last minute notice of the request

12   to dismiss.  To avoid this result, counsel for the debtors should file the request to dismiss as far

---

14   [50] As indicated above, if chapter 13 debtors decide at the last moment to dismiss a case, the debtors must still personally appear at the meeting of creditors and fulfill all chapter 13 obligations until the case is actually dismissed. There are two reasons for this requirement.  First, the court, the trustee and creditors all spend considerable time, attorneys' fees and other resources preparing for the meeting of creditors and the confirmation hearing.  Last minute cancellations by debtors with no advance notice are discourteous and waste the time, attorneys' fees and other resources expended by the court, the trustee and creditors.  Therefore, debtors should avoid last minute decisions to dismiss and requiring debtors to appear at the meeting of creditors (unless and until the case is actually dismissed) creates the necessary incentive to encourage advance planning by debtors.  It also provides an opportunity for the debtors and their counsel to explain to the trustee, creditors and the court the reasons why advance notice of the request for dismissal was not provided.

     Second, some chapter 13 debtors never intend to appear at the meeting of creditors or the confirmation hearing.  They file the chapter 13 case to delay a foreclosure sale or an eviction with no intention of appearing at the meeting of creditors or the confirmation hearing.  When such debtors file a last minute request to dismiss it is, again, discourteous and wastes the time, attorneys' fees and other resources expended by the court, the trustee and creditors in preparing for the meeting of creditors and the confirmation hearing.  And when the court or the trustee receives last minute notice that a debtor wishes to dismiss their case, it is often not possible for the court or the trustee to distinguish between a debtor who filed a case in good faith (but simply made a last minute decision to dismiss) and a debtor who filed a case in bad faith (because the debtor never intended to appear at the meeting of creditors or the confirmation hearing).  Requiring a debtor to appear at the meeting of creditors provides an opportunity for the debtor to demonstrate good faith and avoid a dismissal with a 180-day bar to re-filing.

     Or, put differently, a debtor who files a chapter 13 case in good faith but wishes to dismiss the case can demonstrate that good faith in two independent ways: either by (1) filing the request to dismiss well in advance of the meeting of creditors and the confirmation hearing or (2) filing the request at the last minute but then appearing at the meeting of creditors and the confirmation hearing and explaining to the trustee, the court and the creditors, the reasons why advance notice could not be provided.  These procedures assist the court in sorting out the good faith cases from the bad faith cases and also provide common courtesy to the parties involved in the case.

     [51] While sending counsel to the meeting of creditors to announce a last minute decision to dismiss a chapter 13 case may seem sufficient, it is not for the reasons set forth in the preceding footnote.

in advance as possible and then review the case docket to ascertain whether the court has granted

the request without a hearing (as occurs in most instances) or set a hearing regarding the matter.

If the docket does not reflect dismissal, then the debtors and their counsel must comply with all

requirements of chapter 13 including appearing at meetings of creditors and confirmation

hearings.

Please note that although LBR 3015-1(q)(1)(A) provides that a request to dismiss need

only be served on the chapter 13 trustee and the United States Trustee, such a request does not

comply with applicable Ninth Circuit law.[52]  Therefore, all requests to dismiss must be filed and

served on the trustee, the United States Trustee and all creditors.

### I.    Requests to Convert a Case to Chapter 7.

Similar procedures shall apply whenever a chapter 13 debtor seeks to convert a case to

chapter 7 with little or no advance notice to the court, the trustee and creditors.

### 1.    Oral Requests to Convert.

If a chapter 13 debtor attends a meeting of creditors and then determines it would be

preferable to either dismiss or convert their case, counsel for the debtors may appear at a

confirmation hearing and make the oral request.  The debtors need not personally appear at the

confirmation hearing as long as (1) they appeared at the meeting of creditors and (2) their

attorney appears at the confirmation hearing to communicate the request to dismiss or convert.[53]

If the debtors elect to convert the case to chapter 7, they will still need to file a written request

---

[52] In Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764 (9th Cir. 2008), the Ninth Circuit rejected the argument that a chapter 13 debtor has an automatic right to dismiss a chapter 13 case.  Although the Ninth Circuit did not discuss the necessary notice which a debtor must provide, it seems unavoidable that all creditors are entitled to notice of any request by a debtor to convert to chapter 13.  If the right to dismiss is not automatic then creditors should receive notice of the request to dismiss even if the bankruptcy court elects to act on the request without a hearing.

[53] Under these circumstances, neither the debtors nor counsel should file a written request to convert in between the meeting of creditors and the confirmation hearing (which usually occur on the same date).  If they do so, then the provisions of the next subsection apply which require (among other things) that the debtors appear at the confirmation hearing/chapter 7 status conference.  Instead, counsel should simply appear at the confirmation hearing and make the oral request to dismiss or convert.  This is already the custom and practice in the vast majority of chapter 13 cases.

1    <u>after</u> the confirmation hearing and the court will provide time for them to do so.

2

3    ## 2.    Written Requests to Convert.

4    If a chapter 13 debtor files a written request to convert to chapter 7 at any time prior to

5    the confirmation hearing or any continued confirmation hearing then the following procedures

6    shall apply.  If the chapter 13 case has previously converted from another chapter, then (1) any

7    motion or request to convert is not immediately effective, (2) the debtors must comply with LBR

8    3015-1(q)(2)(B) or (C) and (3) the debtors must continue to comply with all requirements of

9    chapter 13 (including appearing at meetings of creditors and confirmation hearings) unless and

10   until the case is converted.

11   If a chapter 13 case has not previously been converted and the debtors seek to convert a

12   chapter 13 case to chapter 7 at any time prior to any confirmation hearing, the debtors must

13   (1) comply with LBR 3015-1(q)(2)(A) and (2) personally appear at the confirmation hearing.

14   Upon compliance with LBR 3015-1(q)(2)(A), the case is deemed converted to chapter 7 and,

15   simultaneously, the meeting of creditors is cancelled and the confirmation hearing is deemed

16   converted to a chapter 7 status conference.

17   However, when a last minute notice to convert is filed (i.e. in the middle of the night

18   hours before a confirmation hearing), the Court may have no knowledge of the filing or the

19   conversion of the case.[54]  In addition, some debtors (usually without counsel) file last minute

20   requests to convert to chapter 7 in order to prolong a bankruptcy case not filed in good faith.[55]

21   _____

22   [54] Hundreds of documents are electronically filed with the Court every day and night.  It often takes several
23   days before the clerks of the Court can process the documents in the ordinary course of business.

24   [55] Unfortunately, some chapter 13 debtors (usually debtors who do not have attorneys) never intend to appear
     at the meeting of creditors or the confirmation hearing.  They file the chapter 13 case to delay a foreclosure sale or an
25   eviction with no intention of appearing at the meeting of creditors or the confirmation hearing or taking any of the
     numerous steps necessary to prepare their cases for confirmation or to successfully complete a chapter 13 case.  As the
26   meeting of creditors and confirmation hearing approaches, if the automatic stay is still in effect, some debtors in this
     situation have filed last minute notices to convert to chapter 7 to continue delaying the foreclosure sale or eviction in
27   order to avoid dismissal of the case at the confirmation hearing.  Using chapter 13 and chapter 7 in this manner is not a
     good faith use of the bankruptcy system.  Filing a last minute notice to convert to chapter 7 is also discourteous and
28   wastes the time, attorneys' fees and other resources expended by the court, the trustee and creditors in preparing for the
     meeting of creditors and the confirmation hearing.

Therefore, whenever a last minute request to convert is filed, appearance by the debtors at the confirmation hearing (which in such circumstances will constitute a converted chapter 7 status conference) is mandatory to ensure the court knows of the desire to convert and so that the court may evaluate whether the bankruptcy case (now in chapter 7) has been filed in good faith.[56] Upon compliance with LBR 3015-1(q)(2)(A), the case shall be deemed converted to chapter 7 and the chapter 13 meeting of creditors cancelled and, pursuant to section 105(d), the confirmation hearing shall be deemed a chapter 7 status conference and the debtors are ordered to personally appear at the status conference.  Failure of the debtors to personally appear at the status conference will result in dismissal of the chapter 7 case with or without a bar to re-filing. Sending counsel to the confirmation hearing/chapter 7 status conference is not sufficient in such circumstances.[57]

If the request to convert is filed sufficiently in advance of a confirmation hearing/chapter 7 status conference, the court may take the hearing/conference off calendar. Counsel for the debtors should review the court's calendar prior to the hearing/conference.  If the hearing/conference is vacated, then no appearance by counsel or the debtors is required.  If the hearing/conference is not vacated, then the debtors and counsel must both appear.

In general, the best course of action is to file a notice to convert to chapter 7 well in advance of any confirmation hearing.  In most instances, with normal planning efforts, a request

---

[56] When the court or the trustee receives a last minute notice that a debtor wishes to convert a chapter 13 case, it is often not possible for the court or the trustee to distinguish between a debtor who filed a case in good faith (but simply made a last minute decision to convert) and a debtor who filed a case in bad faith (because the debtor never intended to appear at the meeting of creditors or the confirmation hearing).  The documents and pleadings in the case will usually not be sufficient to provide evidence of good faith by a debtor.  Converting the confirmation hearing to a status conference allows the court to inquire regarding the case and gives the debtor an opportunity to demonstrate good faith by appearing and explaining the course of events.

Or, put differently, a debtor who files a chapter 13 case in good faith but wishes to convert the case to chapter 7 can demonstrate good faith in two independent ways: either by (1) filing the request to convert well in advance of the meeting of creditors and the confirmation hearing or (2) filing the request at the last minute but then appearing at the meeting of creditors and the confirmation hearing and explaining to the trustee, the court and the creditors, the reasons why advance notice could not be provided.  These procedures assist the court in sorting out the good faith cases from the bad faith cases and also provide common courtesy to the parties involved in the case.

[56] See preceding footnote.

[57] While sending counsel to the meeting of creditors, confirmation hearing or a chapter 7 status conference to announce a last minute decision to convert to a chapter 7 case may seem sufficient, it is not for the reasons set forth in the preceding two footnotes.

- 23 –

1    to convert to chapter 7 can be filed well in advance of meetings of creditors and confirmation

2    hearings.  In doing so, debtors can demonstrate that they have filed their bankruptcy case in good

3    faith and, in addition, avoid wasting the time that the court, the trustee and creditors expend

4    preparing for such hearings.  In those rare instances in which a request to convert to chapter 7

5    cannot in good faith be filed in advance of a confirmation hearing, the court will hold a status

6    conference to ensure the court knows of the desire of the debtor to convert and to evaluate

7    whether the bankruptcy case (whether in chapter 13 or chapter 7) has been filed in good faith.[58]

8        Alternatively, as stated in the previous section, debtors may make an oral request to

9    convert (or dismiss) instead of filing a written request.  As is the current custom and practice,

10   debtors always have the option to appear at the meeting of creditors and then have their counsel

11   make an oral request to dismiss or convert at the confirmation hearing.

12

13       **J.      Post-Petition Mortgage Payments: Conduit Payments v. Direct Payments.**

14            **1.      National Practice.**

15       In most chapter 13 cases, debtors own real property (usually their residence) secured by

16   one or more mortgages.  In many of these cases, debtors default on the mortgages prior to filing

17   the bankruptcy case.  In order to cure the default, debtors must repay the arrearage and, in

18   addition, make the regular monthly mortgage payments that come due post-petition.

19       In this district and virtually every other jurisdiction in the country, chapter 13 plans cure

20   the arrearage through the payment made to the trustee.  The payment made by the debtor to the

21   trustee each month includes sufficient funds to pay the pre-petition arrearage (as well as

22   additional funds for other creditors).  However, the practice regarding payment of the post-

23   petition monthly mortgage payments varies throughout the country.

24       Some bankruptcy courts require debtors to include the amount of the monthly mortgage

25   payment in the payment to the trustee and then the trustee makes the monthly mortgage payment.

26   This process is often referred to as "conduit payments."  Other bankruptcy courts allow debtors

27   _____

28        [58] See preceding three footnotes.

to make the monthly mortgage payment directly to the secured creditor.  This process is often

referred to as "direct payments".

Throughout the nation, conduit payments are used more frequently than direct payments.

Between 60% to 77% of chapter 13 trustees in the country administer chapter 13 cases using

conduit payments.[59]  "Conduit payments have become a majority practice among chapter 13

trustees."[60]  This practice is consistent with the express language of the bankruptcy code.

Specifically, section 1326(c) states that "[e]xcept as otherwise provided in the plan or in

the order confirming the plan, the trustee shall make payments to creditors under the plan."  This

language creates a presumption that the debtor will pay funds to the trustee and the trustee will

make all required payments to creditors.  Bankruptcy courts have the power and discretion to

require conduit payments and, as stated above, most do so.[61]

Implementation of section 1326(c) varies from court to court and from trustee to trustee.[62]

---

[59] Gordon Bermant and Jean Braucher, "Making Post-Petition Mortgage Payments Inside Chapter 13 Plans: Facts, Law, Policy", 80 American Bankruptcy Law Journal 261, 269 (Spring 2006) ("Conduit payments have become a majority practice among chapter 13 trustees. Sixty percent of the trustees made at least some conduit payments during FY 2005, and 47 percent used the practice almost exclusively. The cash flows (debtor payments, trustee disbursements) of [conduit trustees] were on average larger than those of [non-conduit paying trustees].").

See also, Kevin R. Anderson, Chapter 13 trustee, "Frequently Asked Questions: Making Conduit Mortgage Payments In The District Of Utah" (November 24, 2009) posted on the website for the United States Bankruptcy Court, District of Utah (Link: www.utb.uscourts.gov/documents/cmp/faq_for_conduit_payments.pdf). See page 1: "How Many Trustees Are Making Conduit Mortgage Payments? Approximately 77% of Chapter 13 trustees are making Conduit Mortgage Payments. In 2007, such trustees disbursed almost $950,000,000 in Conduit Mortgage Payments with an average of $5.3 million per trustee."; see also footnote one: "The 77% figure comes from the most recent NACTT data and includes non-U.S. Trustee districts . . . ."

[60] Gordon Bermant and Jean Braucher, "Making Post-Petition Mortgage Payments Inside Chapter 13 Plans: Facts, Law, Policy", 80 American Bankruptcy Law Journal 261, 269 (Spring 2006).

[61] Ninth Circuit law has rejected the argument by chapter 13 trustees that debtors never have the right to make direct payments (see In re Lopez, 372 B.R. 40, 41 (9th Cir. BAP 2007), affirmed, 550 F.3d. 1202 (9th Cir. 2008)) and Ninth Circuit law has also rejected the argument by debtors that they always have the absolute right to make direct payments whenever they wish to do so. See In re Giesbrecht, 429 B.R. 682 (9th Cir. BAP 2010).  Instead, "bankruptcy courts have been afforded the discretion to make the determination of when direct payments may or may not be appropriate . . . ." Id. at 690.

[62] Ed Flynn of the Executive Office for the United States Trustee published an article entitled "Chapter 13: Who Pays the Mortgage" in the ABI Journal (June 2001).  In the article, he analyzed the extent to which chapter 13 trustees in the country make conduit payments in chapter 13 cases and the extent to which debtors make direct payments.  Among other things, he stated as follows: "With only a few exceptions, both forms of practice could be found within the same circuit and state, and in some instances, within the same district.  Some trustees will plan for direct debtor payments in some cases and payments through the trustee in others."

Some courts prohibit direct payments in all circumstances.  Others permit direct payments only when a debtor has not defaulted pre-petition.  For example, a standing order by two bankruptcy judges in the District of Arizona states as follows: "Regular payments owed by a Debtor to a Creditor holding a claim secured by the Debtor's principal residence shall be made by the Debtor to the Trustee for payment through the Chapter 13 Plan if the Debtor is (i) in default under the terms of the secured claim as of the petition date, or (ii) becomes in default under the terms of the secured claim after the Chapter 13 filing. Such payments are referred to as 'Conduit Payments.'" [63]  Likewise, a standing order in the Western District of North Carolina provides that "All Mortgage Payments owed by a Debtor to a Real Property Creditor on a Mortgage Loan as defined in this Order shall be made by the Debtor to the Bankruptcy Trustee for disbursement to the Real Property Creditor by the Bankruptcy Trustee as Conduit Payments . . . ." [64]  Similar orders, local rules and procedures exist in many other jurisdictions[65] including the Southern District of Texas,[66] the Western District of Texas,[67] the Northern District of Ohio,[68] the Southern

---

[63] See Paragraph I of the Standing Order entitled "Judges Marlar And Hollowell's Standing Order On Conduit Mortgage Payments In Tucson Chapter 13 Cases" dated July 30, 2008 issued by Judge Marlar and Judge Hollowell of the United States Bankruptcy Court, District of Arizona.

[64] See Paragraph 2(a) of Standing Order entitled "Administrative Order Establishing Procedure for the Disbursement of Postpetition Conduit Mortgage Payments To Be Effective July 1, 2009" dated June 26, 2009 issued by the United States Bankruptcy Court, Western District of North Carolina.

[65] Researching this issue nationwide can be challenging because some bankruptcy courts have no local rules at all.  Others have local rules but they do not address chapter 13 cases.  And other courts have local rules that do address chapter 13 but only briefly and the rules do not address issues related to direct payments and conduit payments. However, the law review article by Gordon Bermant and Jean Braucher entitled "Making Post-Petition Mortgage Payments Inside Chapter 13 Plans: Facts, Law, Policy", 80 American Bankruptcy Law Journal 261 (Spring 2006) compiles data on this issue nationwide. Id. at 269 ("Conduit payments have become a majority practice among chapter 13 trustees. Sixty percent of the trustees made at least some conduit payments during FY 2005, and 47 percent used the practice almost exclusively. The cash flows (debtor payments, trustee disbursements) of [conduit trustees] were on average larger than those of [non-conduit paying trustees].").

[66] See Rule 3015-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court, Southern District of Texas: "Home mortgage payments will be made though the chapter 13 trustee, in accordance with Home Mortgage Payment Procedures."

[67] See Paragraph 2(a) of the Amended Standing Order Relating To Ongoing Mortgage Payments In Chapter 13 Cases In The Austin Division" dated March 23, 2012 issued by the United States Bankruptcy Court, Western District of Texas, Austin Division: "If a Debtor owes an Arrearage claim to a Mortgage Creditor, all post-petition mortgage payments to the Mortgage Creditor during the term of the Chapter 13 plan shall be made though the Trustee as part of the Chapter 13 plan payment."

District of Ohio,[69] the Western District of Missouri,[70] the Eastern District of North Carolina,[71]

the District of Vermont[72] and the District of Kansas[73].

### 2.    No Pre-Petition Default Versus Limited Pre-Petition Default.

Requiring conduit payments whenever a debtor has defaulted pre-petition makes sense.

When a chapter 13 debtor has failed to timely make mortgage payments pre-petition, it is

reasonable to conclude that the chapter 13 trustee should handle disbursements to the secured

lender post-petition.  The chapter 13 trustee is a bonded fiduciary appointed for the primary

purpose of efficiently and timely receiving money from debtors and distributing funds to

creditors.  In the vast majority of cases, a chapter 13 trustee is more qualified to timely act as the

---

[68] See Paragraph II of Administrative Order No. 09-02 entitled "Order Governing Conduit Mortgage Payments in Chapter 13 Cases" dated May 11, 2009 issued by the United States Bankruptcy Court, Northern District of Ohio: "Unless the Court orders otherwise for good cause (including but not limited to the absence of a pre-petition mortgage delinquency), all Mortgage Payments shall be made by the Debtor to the Trustee for disbursement by the Trustee as Conduit Payments. The plan payment to be paid by the Debtor to the Trustee shall include the Conduit Payment, inclusive of Trustee's fees."

[69] See Rule 3015-1(e)(1) of the Local Bankruptcy Rules for the United States Bankruptcy Court, Southern District of Ohio: "Unless otherwise ordered by the Court, regular monthly payments on a real estate mortgage pursuant to § 1322(b)(5) of the Code shall be disbursed by the trustee if the obligation is in arrears as of the petition filing date."

[70] See Rule 3094-1.C.2.a of the Local Bankruptcy Rules for the United States Bankruptcy Court, Western District of Missouri: "a. For cases filed or converted on or after October 1, 2008, if a debtor is delinquent on the date of the petition on a note secured by real estate, the debtor shall make the post-petition payments to the holder of the claim through the Chapter 13 trustee as part of the Chapter 13 plan payment unless the court orders otherwise. For purposes of Rule 3094-1, delinquent (or not current) means there are past due payments or charges due to the holder of the claim other than the regular contractual payment due in the month of filing or conversion". See also, In re Carey, 402 B.R. 327 (Bankr. W.D.Mo. 2009).

[71] See Rule 3070-2(b)(1) of the Local Bankruptcy Rules for the United States Bankruptcy Court, Eastern District of North Carolina: "Chapter 13 Debtors shall remit all Mortgage Payments owed by them to the Chapter 13 Trustee for disbursement to the Real Property Creditor."

[72] See Paragraph (c)(2)(A) of Standing Order No. 10-02 entitled "Conduit Mortgage Payments in Chapter 13 Cases" dated September 28, 2010 issued by the United States Bankruptcy Court, District of Vermont: ". . . a debtor who is Delinquent is required to make Conduit Mortgage Payments."

[73] See Paragraph I of Standing Order No. 11-3 entitled "Order Governing Conduit Mortgage Payments in Chapter 13" dated November 10, 2011 issued by the United States Bankruptcy Court, District of Kansas: "I. REQUIRED CONDUIT PAYMENTS: Regular payments owed by a Debtor to a Creditor holding a claim secured by the Debtor's principal residence shall be made by the Debtor to the Trustee for payment through the Chapter 13 plan if the Debtor is (i) delinquent as of the petition date, or, (ii) becomes delinquent after the petition date. Such payments are referred to herein as 'conduit payments.'"

post-petition disbursing agent than a debtor who has failed to act as a timely disbursing agent pre-petition. Indeed, the primary role of the chapter 13 trustee is to pay creditors in the case whether secured or unsecured.

However, some debtors will miss one, two or three mortgage payments pre-petition but diligently act to cure the arrearage by promptly filing a chapter 13 case or taking other prompt action. Some courts take a strict view and prohibit direct payments if any pre-petition default occurs.[74] Other courts take a more flexible approach. Ninth Circuit case law gives each bankruptcy court discretion to address the subject in different ways.[75]

### 3.    Parameters Governing Bankruptcy Cases.

In cases governed by this standing order, chapter 13 debtors may make direct payments to secured creditors if the debtors have not defaulted pre-petition or if the pre-petition default does not exceed three months (and none of the other problems described below exist). Conduit payments offer multiple advantages most of which have been described in detail in published cases.[76] First, and foremost, they will reduce the number of cases that fail and increase the overall success rate of chapter 13 cases. The court hopes greater success will raise the success rate of 8% to a level nearer the average national rate of 33%. Even if the success rate is doubled to 16%, that would be measurable progress.

Second, using conduit payments will save court time and resources by reducing the number of bad faith cases, reducing the number of motions for relief from stay, reducing the amount of time spent monitoring direct pay cases and other time savings. Third, using conduit

---

[74] See In re Carey, 402 B.R. 327 (Bankr. W.D.Mo. 2009). In Carey, the Court declined to approve three chapter 13 plans in three different cases because the debtors proposed to make direct mortgage payments but they had defaulted pre-petition and had arrearages of three months (Sharpes), four months (Carey) and six months (Mayhugh).

[75] Ninth Circuit law has rejected the argument by chapter 13 trustees that debtors never have the right to make direct payments (see In re Lopez, 372 B.R. 40, 41 (9th Cir. BAP 2007), affirmed, 550 F.3d. 1202 (9th Cir. 2008)) and Ninth Circuit law has also rejected the argument by debtors that they always have the absolute right to make direct payments whenever they wish to do so. See In re Giesbrecht, 429 B.R. 682 (9th Cir. BAP 2010). Instead, "bankruptcy courts have been afforded the discretion to make the determination of when direct payments may or may not be appropriate . . . ." Id. at 690.

[76] See e.g., In re Carey, 402 B.R. 327 (Bankr. W.D.Mo. 2009).

payments will also reduce the number of instances in which secured creditors are paid late and reduce attorneys' fees, time and resources expended by secured creditors in obtaining relief from the automatic stay.  Fourth, conduit payments will significantly increase the information readily available regarding post-confirmation payments.

For all these reasons, during 2013 and thereafter, the court[77] shall continue to study the viability of direct payments in cases with pre-petition defaults in the range of approximately three months or less.  If the current procedures fail to produce sufficient success in chapter 13 cases, the court may adopt in the future the rule applied in numerous other districts which require conduit payments whenever any pre-petition defaults exists.

For now, as stated above, the court will generally approve a chapter 13 plan that provides direct payments to a secured creditor if the debtor has not defaulted pre-petition or the default does not exceed three months.  However, there are additional circumstances under which the court will not permit direct payments (regardless of whether any pre-petition default occurs).  As stated above, many courts use multi-factor tests (including a 21-factor test by one court[78]) when evaluating whether to permit direct payments.

In that regard, the following factors are important:

- <u>Payment Defaults in an Existing Case</u>.  If a debtor fails to timely make any post-petition payment to a secured creditor, the court will not permit direct payments in such a case.

- <u>Payment Defaults in Prior Chapter 13 Cases</u>.  Likewise, if a debtor has previously failed in a prior chapter 13 case due to a failure to timely make any payments to the trustee or any creditor, the court will typically not approve direct payments in a new case.

- <u>Lack of an Automatic Stay</u>.  If no automatic stay exists in a case (because a prior bankruptcy case has been filed and the debtor has not obtained an

---

[77] In this order, unless the context indicates otherwise, the phrase "The Court", "the Court" and "the Court's" refers to the United States Bankruptcy Court for the Central District of California.  Lowercase references such as "the court" refers to Judge Johnson or to bankruptcy courts in general (depending on the context).  Lowercase references to "court" such as "the court" are never intended to refer to the entire United States Bankruptcy Court for the Central District of California or any of its judges other than Judge Johnson.

[78] <u>In re Perez</u>, 339 B.R. 385 (Bankr. S.D. Tex. 2006), <u>affirmed</u>, 373 B.R. 468 (S.D. Texas 2007) (twenty-one nonexclusive factors to be examined in determining whether to excuse debtors from making ongoing mortgage payments through the plan).

order in the current case continuing or extending the stay), this factor weighs against approving direct payments.

- <u>Debtors are Unwilling to Provide Post-Confirmation Payment Reports</u>. Likewise, as discussed below, if debtors wish to make direct payments but are unwilling or unable to provide post-confirmation reports with evidence demonstrating the payments have been made, this factor weighs against approving direct payments.

- <u>Debtors Assert the Direct Payments are Optional</u>.  As discussed below, if debtors believe that making the direct payments is optional, this factor weighs against approving direct payments.

- <u>Other Grounds</u>.  If any other reason exists to suggest the chapter 13 trustee would more consistently make post-petition payments than the debtor, the court will typically not approve direct payments.

**4.      Procedures Governing Direct Payments.**

If the debtors in a case satisfy the criteria for permitting direct payments, certain findings and procedures will apply.  First, when the court confirms a plan which provides for direct payments, the authorization to make direct payments is conditional upon (1) the debtors making the post-confirmation payments timely and (2) the debtors filing and serving regular periodic reports demonstrating payments have been timely made.  Ninth Circuit law provides for such reporting requirements.[79]

If either of these conditions are not satisfied post-confirmation, the case will likely be dismissed or (at a minimum) the court will enter an order terminating permission to make direct payments and requiring that any and all future payments under the plan will be made through the trustee by conduit payments.  The confirmation order will contain language incorporating these requirements.  A debtor who proposes a chapter 13 plan with direct payments is deemed to have accepted these terms.  Debtors who are uncomfortable with these provisions should draft their plans to provide for conduit payments instead of direct payments.

In addition, as set forth in the confirmation order, when the court confirms a plan which

---

[79] <u>In re Lopez</u>, 372 B.R. 40, 41 (9th Cir. BAP 2007), <u>affirmed</u>, 550 F.3d. 1202 (9th Cir. 2008) ("Instead, the panel suggests that this concern could be alleviated through a requirement by the trustee (either in the plan or by incorporation in the local plan guidelines) that the debtor send proof of direct payment regularly to the trustee. This would allow the trustee to accurately monitor the debtor's performance as well as provide the trustee with data from which to fashion an accurate and complete final account.").

1  provides for direct payments to secured creditors, those payments are mandatory, not optional.

2  Under Ninth Circuit law, chapter 13 trustees are charged with monitoring any and all direct

3  payments to "ensure that the debtor is making regular payments to those creditors."[80]  Such

4  payments are mandatory under section 1325(a)(5)(B)[81] and constitute an obligation under the

5  confirmed plan.  Therefore, direct payments to creditors are required "payments under the plan"

6  within the meaning of section 1328(a).  Failure to make direct payments means a debtor is not

7  eligible for a discharge pursuant to section 1328(a).

8       The order approving confirmation will have terms consistent with these requirements.  A

9  debtor who proposes a chapter 13 plan with direct payments is deemed to have accepted the

10  conditions in this order.  Debtors who are uncomfortable with these provisions should draft their

11  plans to provide for conduit payments instead of direct payments.

12

13       **K.       Post-Petition Mortgage Payments in all Cases.**

14       In some jurisdictions that require conduit payments, the local rules incorporate every

15  post-petition mortgage payment into the plan payment (including all pre-confirmation mortgage

16  payments).  That procedure is not the most practical.  In this district, the chapter 13 trustee does

17  not normally even receive the first plan payment until the meeting of creditors and the trustee

18  would not normally have sufficient information to begin paying secured creditors until the

19  trustee has an opportunity to examine the debtors at the meeting of creditors.

20       Therefore, if a debtor elects (pursuant to LBR 3015-1(m)(3)) to propose a plan with no

21  direct payments (i.e. all conduit payments), then the amount of the plan payment will include the

22  monthly amount owed to a secured lender.  In such instances, counsel for the debtor should

23  contact the chapter 13 trustee immediately upon the filing of the case to ensure that the trustee

24  _____

25       [80] In re Lopez, 372 B.R. 40, 41 (9th Cir. BAP 2007), affirmed, 550 F.3d. 1202 (9th Cir. 2008).

26       [81] Pursuant to section 1325(a)(5)(B), bankruptcy courts cannot confirm a chapter 13 plan unless the plan
   provides for monthly payments to secured creditors.  That is a required obligation under the plan and it is beyond
27  dispute that when a chapter 13 plan provides for conduit payments, a debtor cannot obtain a discharge under section
   1328(a) unless the secured creditor is paid in full.  Permitting direct payments instead of conduit payments does not
28  change this result or requirement.

has sufficient information and funds to begin making the post-petition mortgage payments

timely.  The burden is on the debtor to provide sufficient information and funds to the trustee in a

timely manner and, in many cases, the chapter 13 trustee will need the plan payment and

mortgage information prior to the meeting of creditors in order to timely make the first (and

subsequent) post-petition mortgage payments.

In cases in which the debtors elect no direct payments (i.e. all conduit payments), then the

trustee is authorized to immediately commence making any and all pre-confirmation payments to

secured creditors provided for in the plan and to keep such post-petition pre-confirmation

obligations paid current to the extent debtors provide sufficient funds to do so.  The Trustee may

be paid his standard compensation for making any and all such disbursements.  The Trustee may

not make any other payments until the court either confirms the plan or denies confirmation or

enters a further order.


**L.    Proof of Post-Petition Mortgage Payments in all Cases.**

If, on the other hand, the debtor proposes in the chapter 13 plan to make direct payments

then the debtor must make all post-petition payments in a timely manner and file and serve proof

thereof in a timely manner for the entire post-petition period during which direct payments are

authorized.[82]  Failure to make any post-petition mortgage payments in a timely manner (or

provide proof thereof) will result in dismissal of the case or revocation of permission to make

direct payments.  Debtors must comply with LBR 3015-1(m) in such circumstances as

supplemented by this order.  Please review the terms of LBR 3015-1(m) and this order.

All post-petition mortgage payments must be paid by the due date under the applicable

promissory note.  The due date for all post-petition payments is the date "on which such payment

---

[82] At the confirmation hearing, the court may not approve continued direct payments (for the reasons discussed above).  In those instances, the trustee will indicate when the plan payment will increase (to include the conduit payment), the new payment amount and the timing for the debtor to discontinue making direct post-petition mortgage payments.

first becomes due under the terms of the applicable promissory note."[83]  LBR 3015-1(m)(4)

purports to create two different due date rules but that attempt distorts the underlying loan

documents and appears to be manipulative. [84]

LBR 3015-1(m)(4) should be drafted consistently with a single due date rule.  Either the

due date for all post-petition mortgages payments should be the original due date in the loan

documents or the last date on which the payment may be made without penalty (i.e. at the end of

the grace period).  In cases governed by this standing order, the former shall apply and not the

latter for two different reasons.

First, manipulating loan documents is rarely appropriate and a local bankruptcy rule

should not do so.  Second, in order for debtors to succeed in repaying loan obligations during

bankruptcy and post-bankruptcy, they need to become accustomed to making payments on time

in accordance with the terms of the underlying loan documents.  The loan documents set due

dates, not courts.  Complying with the due dates in the loan documents during the bankruptcy

---

[83] This language comes from LBR 3015-1(m)(4) but LBR 3015-1(m)(4) only applies this language to the payment coming due during the month the case is filed.  For the reasons discussed in the next footnote, that limitation will not apply in cases governed by this standing order.

[84] LBR 3015-1(m)(4) as written is a curious provision.  It contains two mutually exclusive due date rules.  It honors the due date in loan documents but only in the month the case is filed.  For all other post-petition months, the local rule purports to re-set the due date to the "last day that the payment may be made without a late charge or penalty."  The latter rule changes the due date to the end of the grace period under the loan documents.  By creating two different post-petition due date rules, the combined effect is that debtors usually do not need to make any post-petition mortgage payment in the month they file their bankruptcy case.

Because most mortgages are due on the first day of the month, a debtor who files a bankruptcy case on or after the first day of the month need not make a mortgage payment that month.  In many instances, such debtors will have a two week grace period (usually until the 15th day of the month) but by defining the due date for the mortgage payment to be the last day of the grace period for all payments other than the first month payment, LBR 3015-1(m)(4) specifically relieves debtors of the obligation to make any mortgage payment in the first month if the case is filed on or after the original due date or during the grace period or thereafter.  In summary, LBR 3015-1(m)(4) appears to include two different due date rules in order to allow debtors to entirely skip making the payment in the first month.  In fact, after announcing the two mutually exclusive due date rules, LBR 3015-1(m)(4) then contains a sentence which appears to advise debtors that they are free to file their bankruptcy case the day a payment comes due (and well within the grace period) and skip making the payment.  See LBR 3015-1(m)(4) ("If that date falls on or before the petition date, the Filing Month Payment will be considered pre-petition and need not be paid in order to comply with this subsection.").

Creating two different due date rules in this manner for this purpose is not appropriate and, therefore, will not apply.  LBR 3015-1(m)(4) should be drafted consistently with one due date rule.  Either the due date for all post-petition mortgages payments should be the original due date in the loan documents or the last date on which the payment may be made without penalty (i.e. at the end of the grace period).  In cases governed by this standing order, the former shall apply and not the latter.  There is no legitimate purpose for the local rules to manipulate the underlying loan documents.

- 33 –

case is a good habit that will serve debtors well post-bankruptcy.

With respect to LBR 3015-1(m)(5), those provisions apply in cases governed by this standing order.  Debtors need to comply with those terms.

With respect to LBR 3015-1(m)(6), those provisions also apply in cases governed by this standing order, with certain modifications.  First, debtors must use the "Declaration Of Debtors Regarding Secured Debt Payment History" ("Payment History Declaration") – which is available on the Court's website[85] - instead of form F 3015-1.4DEC.PRECONF.PYMTS.  The form F 3015-1.4DEC.PRECONF.PYMTS was revised last year in a manner that makes it less useful.  Therefore, debtors should use the Payment History Declaration instead.  Do not use form F 3015-1.4DEC.PRECONF.PYMTS.

The "Payment History Declaration" should be completed, filed and served between seven to fourteen days prior to the confirmation hearing.  It should be served upon the chapter 13 trustee and all creditors holding consensual liens against the property identified in the declaration.  As set forth in the form, the Payment History Declaration must provide information regarding the amount of any and all monthly payments covering the period from (1) January 1st of the calendar year preceding the year in which the bankruptcy case is filed to (2) the date of the filing of the declaration.  Debtors must attach to the Payment History Declaration legible copies of all payments made during the six months prior to the petition date and all post-petition payments.  The form of post-petition payments (and proof thereof) must comply with the provisions of LBR 3015-1(m)(5).

The Payment History Declaration applies to encumbered real property only.  It is never required for personal property.

The Payment History Declaration is required when the debtor intends to modify in any

---

[85] Judge Johnson's form Payment History Declaration is available on the Court's website using the following link: http://www.cacb.uscourts.gov/sites/cacb/files/documents/judges/self-calendaring/WJ_Secured%20Debt%20Payment%20History%20Declaration.pdf.  If for any reason this link does not work, the form can be found on the Court's website at http://www.cacb.uscourts.gov/.  Select the heading "Judges" on the main page and then on the next page click on "Johnson, W" and then on the next page click on the subheading "Forms".  Then click on the link entitled "Chapter 13 – Form Secured Debt Payment History Declaration [MS Word Format]".

1    manner a debt secured by real property (i.e. to cure an arrearage, lien strip or otherwise). It is not

2    required if the chapter 13 case does not involve any real property.  The Payment History

3    Declaration does not apply to unencumbered real property.  The declaration is not required if the

4    chapter 13 case involves encumbered real property but the debtor does not intend to modify any

5    debt secured by the real property.

6        For example, if the debtor intends to surrender or abandon real property, the Payment

7    History Declaration is not required with respect to that property.  Likewise, if the debtor intends

8    to keep real property but the debtor is current on all debts secured by the real property (and does

9    not intend to cure any arrearage, lien strip or otherwise modify such debts), the Payment History

10   Declaration is not required with respect to that property.

11       If an initial confirmation hearing is continued, the court will usually require the filing of

12   another Payment History Declaration between seven to fourteen days prior to the continued

13   hearing date.  Whenever a confirmation hearing is continued, the court enters a minute order

14   with instructions for the next hearing.  Debtors and their counsel should carefully review all such

15   minute orders and comply with the terms.

16       Pursuant to LBR 3015-1(m)(7), the failure to timely make all post-petition payments or to

17   timely file and serve the Payment History Declaration with legible copies of all required backup

18   documentation attached will "generally result in dismissal of the case."

19

20       **M.    Miscellaneous Plan Provisions.**

21       When drafting a chapter 13 plan, debtors and counsel should consider the following

22   miscellaneous matters.  The court does not approve of addendum F 3015-1.1.ADDENDUM or

23   any similar plan addendum. Form F 3015-1.1.ADDENDUM is no longer an approved form in

24   this district.  The form was unanimously withdrawn as an approved form by the judges of this

25   Court on June 1, 2012.

26       Any and all provisions in a chapter 13 plan purporting to extinguish or modify any lien

27   are hereby disapproved.  Pursuant to F.R.B.P. Rule 7001(2), encumbrances and liens may only

28   be modified pursuant to an adversary proceeding or, in limited circumstances, by motion.

1   Confirmation of the plan shall not constitute an avoidance, extinguishment or modification of

2   any lien or encumbrance.

3        Any provisions in a chapter 13 plan purporting to create an automatic stay are hereby

4   disapproved.  The automatic stay is governed by 11 U.S.C. § 362 and neither a chapter 13 plan

5   nor a confirmation order shall be construed to expand its provisions.  If, for example, the

6   automatic stay has already terminated by operation of law (or never existed in a case in the first

7   instance by operation of law), neither the plan nor confirmation of the plan will create an

8   automatic stay.

9        Any and all provisions in a chapter 13 plan purporting to immediately discharge any

10  debts are hereby disapproved.  Debts may only be discharged by further court order.

11       The provisions of a chapter 13 plan are not binding on any creditor or other party who

12  was not properly and timely served with the chapter 13 plan and the court mandated notice of the

13  date, time and location of the meeting of creditors and confirmation hearing (i.e. form F 3015-

14  1.02.NOTICE.341.CNFRM).

15       Pursuant to sections 1328(a)(2) and 523(a)(3), no debt shall be discharged in this case if

16  the creditor holding the debt did not receive proper and timely notice of the case and the terms of

17  the chapter 13 plan.

18

19       **N.      Preparing for the Confirmation Hearing.**

20       When preparing for confirmation hearings, debtors should be mindful of a few other

21  issues which may result in dismissal of chapter 13 cases.  In general, all chapter 13 debtors are

22  ordered to comply with all provisions of the Federal Rules of Bankruptcy Procedure, the

23  Bankruptcy Code, this standing order and the local bankruptcy rules (to the extent they are not

24  modified by this order) including, but not limited to, timely filing all required documents,

25  providing all required documents to the trustee, appearing at the meeting of creditors and

26  attending all confirmation hearings.  All documents must be filed, served and delivered timely.

27  Existing deadlines will not be changed.  Debtors must take all required steps to timely confirm a

28  chapter 13 plan at the confirmation hearing and timely comply with all applicable law governing

1    confirmation of chapter 13 plans.

2          Failure to do so will typically result in dismissal of the case at the confirmation hearing.

3    For example, chapter 13 cases are regularly dismissed when debtors (1) are currently involved in

4    another pending bankruptcy case, (2) have filed a bankruptcy case in the wrong court (either the

5    wrong district or division), (3) have filed fraudulent schedules or other improper documents (i.e.

6    schedules that are entirely blank or schedules that are photocopies of schedules filed in other

7    bankruptcy cases), (4) have incurred debts in excess of the statutory limits or are otherwise not

8    eligible for chapter 13 relief, (5) have filed schedules that demonstrate the debtors have no

9    income or negative net income, (6) have failed to timely file and serve the chapter 13 plan or any

10   other required documents, (7) have filed motions that are procedurally or substantively improper,

11   (8) have filed a prior chapter 13 case that has recently failed due to nonpayment by the debtors of

12   plan payments, payments to secured creditors or other defaults in the prior case or (9) have filed

13   documents indicating any other reason that would prevent confirmation of a chapter 13 plan or

14   the successful completion of a chapter 13 case.

15         Avoiding these problems will enhance the ability of debtors to confirm chapter 13 plans.

16

17   **IV.    POST-CONFIRMATION MATTERS.**

18         In those cases in which a chapter 13 plan is confirmed, debtors should endeavor to timely

19   make all payments required under the terms of the plan and keep in mind the following post-

20   confirmation matters.

21

22         **A.    How to Defeat a Motion to Dismiss by Curing All Arrearages.**

23         When a chapter 13 debtor defaults under a confirmed chapter 13 plan by failing to make

24   payments to the trustee, the trustee usually responds with a motion to dismiss the case.  Debtors

25   often cure by making the missed payments.  The best time for curing missed payments is when a

26   debtor receives the trustee's motion to dismiss (or earlier, if possible).  If that timing proves

27   problematic, the next best time to cure an arrearage is when a debtor files opposition to the

28   trustee's motion to dismiss.  If a debtor fails to do so at that point in time, then the final deadline

- 37 –

for curing all arrearages is the hearing regarding the trustee's motion.  By that hearing, all arrearages must be cured in order to avoid dismissal.

Please note that a complete cure includes all payments that have come due prior to the hearing date including, but not limited to, payments to the trustee that came due after the filing of the motion to dismiss but prior to the hearing.  In summary, debtors must be entirely current on all payments by the hearing regarding the motion to dismiss.  Otherwise, the case will be dismissed at the hearing.

Finally, the trustee must <u>receive</u> all funds no later than the date and time of the hearing on the motion to dismiss.  Therefore, if the debtors are not completely current on all payments due to the trustee fourteen days prior to the hearing regarding the motion to dismiss, any further payments should be brought to the hearing and personally delivered to the trustee at the hearing, not mailed during the two week period prior to the hearing.  The final deadline to cure is the hearing and by that date and time, the trustee must have <u>received</u> all payments.  Mailing a payment the day before the hearing date does not satisfy this requirement and will not defeat the motion.

**B.      Timing for Filing a Motion to Modify.**

The most common and successful method (by far) of defeating a motion by a chapter 13 trustee to dismiss a case is when a debtor cures the arrearage.  In some limited instances, however, debtors may be able to effectively respond to motions to dismiss by filing a motion to modify their chapter 13 plans.  Unfortunately, the local rules do not provide any guidance regarding when such motions should be filed and some attorneys have waited to file a motion to modify a chapter 13 plan until the day before a hearing regarding a motion by the trustee to dismiss the case.  That is not timely.

A hearing regarding a motion by a trustee to dismiss a chapter 13 case typically occurs between forty-five to sixty days after the trustee files and serves the motion to dismiss.  And the motion itself is typically filed forty-five to sixty days after an initial payment default by a debtor.  So the period of time from the first default by a debtor to the hearing date typically spans three to

- 38 –

1    four months.  As a result, filing a motion to modify a chapter 13 plan the day before the hearing

2    is not timely given that debtors have three to four months to respond to the motion.

3          Therefore, the following deadline will apply.  Ideally, when debtors wish to modify their

4    chapter 13 plans, they should do so before a default occurs.  Proactive debtors and their counsel

5    have done so in some cases (although it is a rare occurrence).  When a debtor and counsel for the

6    debtor file a motion to modify a chapter 13 plan before a default occurs, both of them

7    demonstrate diligence and a commitment to chapter 13 success.

8          If that timing proves unachievable, however, debtors should file the motion to modify

9    immediately upon the filing of the motion to dismiss by the trustee.  If debtors do not act at that

10   point in time, the next best time to file a motion to modify is when debtors file opposition to the

11   motion to dismiss.  Both the opposition and the motion to modify should be filed concurrently (at

12   the latest).  If, for any reason, that does not occur, then the motion to modify must be filed and

13   served in such a manner so that it can be scheduled (on regular notice) for a hearing on the same

14   date and time as the trustee's motion to dismiss.

15         In other words, the hearing regarding the trustee's motion to dismiss is the final

16   opportunity for consideration of a motion to modify a chapter 13 plan and the motion to modify

17   must be filed and served in such a way so that it can be heard on regular notice no later than the

18   hearing regarding the trustee's motion to dismiss.  As a practical matter, given other provisions

19   of the local rules, this means that the motion to modify must be filed and served no later than

20   twenty-one[86] to twenty-four days[87] prior to the hearing.[88]  Filing a motion to modify the day

21   before the hearing regarding the trustee's motion to dismiss will not suffice and, instead, will

22   result in dismissal of the case (if payments are not brought current).

23         Because of these time parameters, if a debtor files a motion to modify less than forty-five

---

[86] See LBR 9013-1(d)(2).

[87] Rule 9006(f) extends the twenty-one day deadline in LBR 9013-1(d)(2) by three days in certain circumstances.

[88] Applications for an order shortening time will not be granted for such motions because ample time exists (i.e. months) to file and serve the motion on regular time.

1    days prior to the hearing regarding the trustee's motion to dismiss the debtor should not use the

2    negative notice procedures under the local rules (i.e. the procedure that permits the granting of a

3    motion without a hearing).  Instead, set the matter for a hearing <u>immediately</u> upon filing and

4    serving the motion.  Otherwise, debtors may fall into a procedural trap and not have sufficient

5    time to have the matter resolved in a timely fashion.

6

7    **C.    Converting to Chapter 7.**

8    Finally, some debtors respond to a motion by a trustee to dismiss by requesting

9    conversion to chapter 7.  Many do so well before the hearing regarding the motion to dismiss but

10    some wait until the day of the hearing.  Debtors who wish to convert to chapter 7 should do so at

11    least a week before the hearing.  Waiting until an hour before the hearing or the day before the

12    hearing may result in dismissal of the case instead of conversion.[89]

13    In addition, in a limited number of cases, debtors (or their counsel) appear at a hearing

14    regarding a motion to dismiss without having cured the defaults or made a decision between

15    dismissal or conversion.  In those instances, the case will be dismissed.[90]  In order to limit the

16    burden on the clerks of the Court,[91] continuances of the motion to dismiss are not granted nor is

---

[89] Waiting until the eleventh hour is unwise.  When counsel for a debtor files a request to convert a chapter 13 case to chapter 7 electronically, one or two days may pass before the clerk's office advises chambers of the request.  If a debtor files the request to convert non-electronically, three or four days may pass before chambers receives notice of the request.  Under these circumstances, cases may be dismissed instead of converted.

Debtors often do not appear at hearings regarding motions to dismiss when they have filed a request to convert.  But if the request is filed the day of the hearing or the day before, neither the judge nor the trustee may be aware of the request.  Therefore, at the hearing, the trustee typically follows the normal procedure whenever an uncured default exists and asks for dismissal which the court then grants.  The best way to avoid this result is to file the request to convert at the earliest opportunity and at least one week prior to the hearing.

As a practical matter, the clerk of the Court acts very efficiently in Riverside and often communicates with chambers within twenty-four hours of receiving a request to dismiss or convert a case (sometimes even less).  We are very fortunate to have an exemplary team of clerks.  But nothing in any organization happens instantaneously and it is unwise to assume that your judge and trustee will have any knowledge of a request to convert that is filed an hour or a day before a hearing regarding a trustee's motion to dismiss.

[90] In nearly every instance, the dismissals are without a bar to re-filing which permits debtors to file a chapter 7 case if they later decide they wish to do so.

[91] At confirmation hearings in chapter 13 cases, when confirmation is not achieved, debtors often request seven days to consider whether they want their case dismissed or converted to chapter 7.  The Court has established a procedure to accommodate this request for an extension but it requires the clerks of the Court to take additional action to track these cases (i.e. docketing a further hearing as a holding date, updating the Court's calendaring system and/or

- 40 –

1    additional time provided for debtors to contemplate choosing between dismissal or conversion.

2    As stated above, debtors already have between three to four months to make that decision.  That

3    is sufficient.

4

5    **V.        OBJECTIONS.**

6            As stated above, all of the terms of this standing order will govern in chapter 13 cases

7    assigned to Judge Johnson.  Chapter 13 debtors who object to this standing order must (1) file

8    and serve a written objection at least seven days prior to the confirmation hearing and (2) orally

9    assert the written objection at the confirmation hearing.  Failure to object will be deemed consent

10    to the terms of this standing order.

11            The purpose of this order is to (1) identify the key procedures needed to succeed in

12    chapter 13, (2) ensure that the debtors, their counsel, the trustee, creditors and the court achieve a

13    sufficient consensus regarding the key factors necessary for success in a chapter 13 case and

14    (3) provide the debtors with sufficient time in advance of the confirmation hearing to evaluate

15    their chapter 13 bankruptcy case in light of its requirements.

16            Debtors and their counsel are encouraged to ask questions at the confirmation hearing

17    regarding any aspect of chapter 13, this standing order or any other matters.

18

19

20

21

22

23

24

---

25    another tickler system for keeping track of such cases).  Because this procedure imposes additional burdens on the clerks of the Court, it is used sparingly (i.e. only at initial confirmation hearings).

26            The extra burden on the clerks of the Court seems justified at initial confirmation hearings because debtors often need additional time to evaluate their case after the meeting of creditors and confirmation hearing occur (which occur in Riverside on the same date).  Motions to dismiss, however, are entirely different.  As described above, debtors

27    have between three to four months to prepare for a motion to dismiss.  Therefore, ample time exists for debtors to make a decision between dismissal or conversion.  Burdening the clerks with an additional procedure under these

28    circumstances is neither a necessary or wise use of increasingly scarce judicial resources.

1 **VI.    ORDER.**

2          Accordingly, for all the reasons stated above, the terms of this standing order apply to all

3 chapter 13 cases assigned to Judge Johnson that are filed on or after January 1, 2013 or converted

4 to chapter 13 on or after January 1, 2013.  All chapter 13 debtors in such cases are directed to

5 comply with all aspects of this standing order.

6

7

8 IT IS SO ORDERED.                                          _____

9                                                            United States Bankruptcy Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28