

**FILED & ENTERED**

**NOV 04 2024**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** gooch **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>SEVINA DANIELLE BEGA and<br>RYAN WILLIAM BEGA,<br><br>                             Debtors. | CASE NO.: 6:24-bk-13099-WJ<br><br>CHAPTER: 13 |
| | **ORDER CONFIRMING CHAPTER 13 PLAN** |
| | <u>CONFIRMATION HEARING</u>:<br>DATE:            October 31, 2024<br>TIME:            11:15 a.m.<br>COURTROOM:   304<br>PLACE:           United States Bankruptcy Court<br>                       Central District of California<br>                       3420 Twelfth Street<br>                       Riverside, CA  92501 |

On June 6, 2024, the Court entered a scheduling order [docket #19] ("Order") in this case. On October 3, 2024, pursuant to paragraph 4(c) of the Order, the chapter 13 trustee ("Trustee") filed a statement [docket #38] ("Statement") with an attached worksheet recommending confirmation of the amended chapter 13 plan filed by the debtors in this bankruptcy case ("Debtors") on August 31, 2024 [docket #32] ("Plan") on the terms set forth in the Statement and the attached worksheet.

Pursuant to paragraph 4(d) of the Order, counsel for the Debtors then filed a pleading on October 9, 2024 [docket #39] agreeing with the Trustee's terms in the Statement and the worksheet. No objections to confirmation have been filed and the deadline to do so has passed.

The Debtors have not objected to the Court's procedures order [docket #10] ("Procedures Order") and the deadline to do so in paragraph V on page 41 of the Procedures Order has passed. Accordingly, the case is now ready for confirmation.

On October 31, 2024, the Court held the confirmation hearing. Prior to the hearing, the Court prepared this confirmation order based on the Statement and attached worksheet. The Court then posted this form of order as a tentative ruling prior to the confirmation hearing. At the hearing, the Trustee recited on the record the agreed terms of confirmation as set forth in the Statement and this Order. Counsel for the Debtors and the Trustee reviewed this form of order prior to the confirmation hearing and, on the record on October 31, 2024, counsel for the Debtors and the Trustee consented to entry of this form of Order.

Therefore, the Court finds that the Plan meets the requirements of 11 U.S.C. § 1325 and, accordingly, the Court hereby ORDERS:

1. The Plan is confirmed as follows. The amount of each monthly payment by the Debtors to the Trustee is as follows:

Starting July 1, 2024, the monthly plan payment is $974.
Starting September 1, 2024, the monthly plan payment is $1,081.
Starting October 1, 2024, the monthly plan payment is $1,262.
Starting November 1, 2024, the monthly plan payment is $1,274.

The due date for each payment is the 1st day of each month and the Trustee must receive the payment by that day each month. The duration of the Plan is 60 months. General unsecured claims shall be paid 100% of their allowed claims. The Plan is confirmed as a base plan and the base plan amount is $75,653. Debtors must pay sufficient funds to pay (1) the base plan amount or (2) the percentage to general unsecured creditors (as well as payment in full of all senior claims), whichever is greater.

2. Confirmation of the Plan is without prejudice to the rights of secured creditors with respect to post-petition defaults by the Debtors.

3. Other provisions:

a. The Debtors shall timely submit statements of income on an annual basis to the Trustee, which income shall be reviewed by the Trustee who may petition the court to increase the monthly plan payment for cause until such time as all allowed unsecured creditors, to the extent they are to be paid during the term of the Plan, are paid 100%. The Trustee may increase the dividend paid allowed unsecured claims until the full amount of the Plan base stated in this paragraph has been paid by the Debtors or the claims have been paid in full without further notice or order from the court.

b. Counsel for Debtors is awarded fees of $5,000; having previously received $1,200, counsel is entitled to payment of $3,800 from the estate at a rate no more than $380 per month commencing forthwith. Using available funds, the Trustee shall make this monthly payment to counsel provided that sufficient funds exist after paying all secured obligations (including, but not limited to, conduit and non-conduit secured obligations) and any other senior priority unsecured claims (such as Trustee's fees, domestic support obligations, etc.).

     c.     (i)     As used in this order, (A) the term "Filed Secured/Priority Debts" means all secured claims and priority unsecured claims for which proofs of claim have already been filed in this case by the holders of the claims and (B) the term "Unfiled Secured/Priority Debts" means all secured and priority unsecured debts which (1) the Debtors provide for under the Plan or by interlineation as set forth in this order and (2) the creditors holding the claims have not yet filed a proof of claim. The terms Filed Secured/Priority Debts and Unfiled Secured/Priority Debts do not include claims of any attorney's fees of counsel for the Debtors. (Those are addressed in the preceding paragraph).

          (ii)     The Trustee is authorized to immediately start making payments to holders of Filed Secured/Priority Debts and Unfiled Secured/Priority Debts. The Trustee shall pay holders of Filed Secured/Priority Debts in accordance with the terms set forth in the proofs of claims filed by the creditors (not the Plan) unless this order (or any other court order) provides otherwise. The Trustee shall make payments to holders of Unfiled Secured/Priority Debts based on the amounts set forth in the Plan or, if different, in this order and, unless or until the court orders otherwise, the Trustee shall continue to do so even if proofs of claim are never filed by creditors holding Unfiled Secured/Priority Debts. Pursuant to F.R.B.P. Rule 3004, the Debtors are deemed to have filed proofs of claims for Unfiled Secured/Priority Debts in the amounts set forth by the Debtors in the Plan or, if different, by interlineation in this order. However, if the holder of an Unfiled Secured/Priority Debts later files a proof of claim (whether timely or untimely), the amounts owed to that creditor asserted in that proof of claim will control (and supersede the amounts stated by the Debtors in the Plan or in this order) and the Trustee shall pay in accordance with the proof of claim unless and until (A) an objection to the proof of claim is filed and (B) the court enters an order regarding such objection.

     d.     In addition to the monthly plan payments, all tax refunds (in any amount) received during the term of the Plan are pledged to the Plan and the Debtors shall promptly turn over all such refunds to the Trustee. Debtors shall timely file all tax returns and promptly provide the Trustee with copies.

     e.     Debtors reserve the right to object to any claim notwithstanding any Plan interlineations. Likewise, notwithstanding any term of the Plan that provides otherwise (if any), the Trustee retains the right and standing to object to claims and nothing in the Plan shall be construed as limiting or altering the right or standing of the Trustee to object to any proof of claim.

     f.     Interlineations:

          1.     The Trustee shall pay the priority claim of the Internal Revenue Service in the amount of $12,589.26 at a rate no less than $226.21 per month for 60 months with interest at the rate of 3% per annum.

          2.     The Trustee shall pay the priority claim of the Franchise Tax Board in the amount of $412.68 at a rate no less than $15.28 per month for 27 months.

4.     Additional provisions:

     a.     As discussed on the record, the Debtors do not seek to avoid, extinguish, bifurcate or otherwise modify any liens in this bankruptcy case and, therefore, any and all provisions in the Plan purporting to avoid, extinguish, bifurcate or otherwise modify any lien are hereby disapproved. Confirmation of the Plan shall not constitute an avoidance, extinguishment, bifurcation or modification of any lien or encumbrance. As discussed in the Procedures Order, the deadline to file motions (or adversary proceedings) to avoid liens including, but not limited to, motions to avoid liens pursuant to 11 U.S.C. § 522(f), has passed and no such motions may be filed in the future in this case. Confirmation of the Plan and the terms of the Plan are based on the absence of any lien avoidance, extinguishment, bifurcation or modification in this case whether by motion, adversary proceeding or otherwise.

     b.     No claims listed in Class 3B (or any other class) shall be bifurcated.

      c.      Any provisions in the Plan purporting to create an automatic stay are hereby disapproved. The automatic stay is governed by 11 U.S.C. § 362 and neither the Plan nor this order shall be construed to expand its provisions. If, for example, the automatic stay has already terminated by operation of law (or never existed in this case in the first instance by operation of law), neither the Plan nor this order nor confirmation of the Plan will create an automatic stay.

      d.      Any and all provisions in the Plan purporting to immediately discharge any debts (in whole or in part) are hereby disapproved. Debts may only be discharged by further court order.

      e.      Pursuant to sections 1328(a)(2) and 523(a)(3), a claim or debt shall not be discharged if the creditor holding the claim or debt did not receive proper and timely notice of the case and the terms of the Plan. The provisions of the Plan and this order are not binding on any creditor or other party who was not properly and timely served with the Plan and the court mandated notice of the date, time and location of the meeting of creditors and confirmation hearing (i.e. F 3015-1.02.NOTICE.341.CNFRM or F 3015-1.02.NOTICE.341.LIEN.MOD.PLAN.CNFRM).

      f.      The Plan is modified to comply with the requirements of the court's approved plan form.

      g.      In the event of any differences between the terms of the Plan and this Order, the terms of this Order shall control. This Order supersedes and modifies any contrary or inconsistent terms of the Plan.

      h.      The Court previously entered the Procedures Order and it continues to apply in this case. Debtors and counsel should review the Procedures Order again and, in particular, the provisions governing post-confirmation matters.

      i.      The Debtors have checked the box "none" in section IV of the Plan. Therefore, all language in section IV of the Plan after the end of the first full paragraph of section IV of the plan (which ends "or any Plan provision deviating from this form.") is hereby stricken and shall not apply in this case. In particular (but without limitation), all terms in section IV(A), (B), (C) and (D) of the Plan are stricken and shall not apply in this case. As set forth in the Plan, any nonstandard plan provision in the Plan (i.e. a plan provision not otherwise included in the Court's mandatory chapter 13 form, Form F 3015-1.01.CHAPTER13.PLAN, or any plan provision deviating from that form) is ineffective and hereby stricken.

      j.      If the Plan includes addendum F 3015-1.1.ADDENDUM or any similar addendum, that addendum is hereby disapproved. The F 3015-1.1.ADDENDUM is no longer an approved form in this district. The form was unanimously withdrawn as an approved form by the judges of this district on June 1, 2012.

      k.      If Attachment A, B, C or D is attached to the Plan (or any other attachment), that attachment is hereby disapproved and stricken.

      l.      The last sentence of section II(A) of the Plan is hereby stricken and shall not apply in this case.

5.      Direct Payments and Related Matters

      a.      As discussed on the record, the Debtors will be responsible for making all of the following payments directly to creditors during the chapter 13 case (collectively, "Direct Payments"):

      All payments for the automobile loan for the 2021 Toyota Venza in the full amount required under the loan documents which is currently believed to be approximately $638.04 per month. (Creditor: Capital One Auto Finance).

      b.      As used in this order, the term "Direct Payments" means (i) all payments described in the preceding paragraph 5(a) of this order which the Debtors are responsible for paying directly to creditors at any time during this case and (ii) any other payments to be made by or on behalf of the Debtors directly to any creditor during the term of the Plan. Direct Payments are required obligations under the terms of the confirmed Plan for all purposes and, therefore, (among

other things) constitute required "payments under the plan" within the meaning of 11 U.S.C. § 1328(a).  As discussed in paragraph 5(e) below, Debtors must provide proof that all Direct Payments are paid during the case.

       c.      With Court permission, the Bankruptcy Code often permits debtors to sell, abandon or refinance property of the estate during a chapter 13 case or obtain other financing on a secured or unsecured basis.  However, court permission in advance is required to do so.  Therefore, if the Debtors seek to sell, transfer, give away, abandon or refinance property (including, but not limited to, collateral for the obligations which are paid by Direct Payments) or obtain any other financing, the Debtors must file an appropriate motion to obtain a court order prior to selling, abandoning, transferring, giving away or refinancing property or obtaining other financing.  Likewise, if in preparing to sell, abandon or refinance property or otherwise transfer property or obtaining financing, the Debtors desire to discontinue, suspend or otherwise not timely pay the Direct Payments, the Debtors must file a motion to modify the Plan (to excuse the payments) prior to defaulting in making Direct Payments in order to modify the stream of payments due under the terms of the confirmed Plan and avoid a default under the Plan and section 1328(a).

       d.   The Debtors shall timely (1) pay to the Trustee all payments by each monthly due date, (2) pay all other obligations arising under the Plan or in the case including, but not limited to, Direct Payments and (3) comply with all provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, local bankruptcy rules, the Procedures Order and this order.  Failure to do so may result (depending on the circumstances) in dismissal of the case with or without a bar to re-filing pursuant to 11 U.S.C. § 109(g)(1) (and other applicable law) or denial of discharge.

       e.      Yearly Reports.  Once a year, for any year in which the Debtors were required to make any Direct Payments, the Debtors shall file and serve a cumulative report regarding Direct Payments.  The report shall be filed each January.  So, for example, if the Debtors are required to make any Direct Payments at any time in 2024, then between January 1, 2025 and January 31, 2025, the Debtors shall file a cumulative report regarding all Direct Payments made during the case for the period from the petition date to December 31, 2024.  Likewise, if the Debtors are required to make any Direct Payments at any time in 2025, then between January 1, 2026 and January 31, 2026, the Debtors shall file a cumulative report regarding all Direct Payments made during the case for the period from the petition date to December 31, 2025.  Thereafter, the Debtors shall continue to file such reports each January covering the entire post-petition period from the petition date to the December 31st preceding the January in which the report is filed until (a) entry of discharge, (b) conversion of this case to another chapter or (c) dismissal of this case.  Each report shall include a declaration by the Debtors with a table stating whether and when the Debtors made all Direct Payments.  The table in the declaration should include dates of each payment, amounts of each payment and the payee of each payment.  Appropriate legible backup documentation should be attached to the declaration which demonstrates all payments were made.  Each time the Debtors make Direct Payments they should retain copies of the checks or other instruments used to make the payments in order to attach such backup documentation to the annual declaration.  The annual declaration shall be filed with the Court no later than January 31st each year and served on the Trustee by the same date.  No annual declaration or other pleading is required for any year in which the Debtors were not required to make any Direct Payments.

       f.      If the Debtors later seek to convert this case to another chapter or to dismiss this case or to file a motion to modify the Plan in order to suspend, reduce or modify payments under the Plan (such as Direct Payments, payments to the Trustee or any other Plan obligations), the Court hereby sets a deadline for doing so.  The deadline for seeking to dismiss or convert this case or to file the motion to modify the Plan is twenty-eight days after the due date for the first monthly payment to the Trustee, Direct Payment, mortgage payment, lease obligation or other Plan obligation that the Debtors fail to pay timely.  In other words, the deadline to seek conversion or dismissal of this case or modification of the Plan is twenty-eight days after the first default under the terms of the Plan, the local rules or other applicable law.

6.  Abandoned Property.

As discussed on the record and as set forth in the Procedures Order, the 2020 Toyota Rav4 ("Abandoned Property") is hereby deemed abandoned and the automatic stay is lifted as to such property.  Any and all creditors may proceed with enforcing claims against the Abandoned Property forthwith.  The automatic stay is hereby lifted as to the Abandoned Property and, therefore, no motion for relief from stay is necessary.  The Abandoned Property is no longer property of the bankruptcy estate and not protected by the automatic stay.  In addition, the Court hereby lifts any co-debtor stay affecting the Abandoned Property or claims secured by the Abandoned Property including, but not limited to, any co-debtor stay arising under section 1301 of the Bankruptcy Code.  This bankruptcy case no longer stays any creditor holding a claim secured in whole or in part by the Abandoned Property from collecting against any non-debtor co-obligor in any manner.

IT IS SO ORDERED.

###

Date: November 4, 2024

_____
Wayne Johnson
United States Bankruptcy Judge